## 60152. WOOD v. THE STATE.

SMITH, Judge.

Margaret Wood was convicted for violating the Georgia Controlled Substances Act. We reverse.

The testimony adduced at trial showed that appellant was employed as a registered nurse at a Clarke County hospital. Part of her duties included dispensing controlled drugs between the hours of 3:00 p.m. and 11:00 p.m. to patients located on the hospital's fifth floor. On April 23, 1979 several syringes located on the fifth floor and containing the narcotic pethidine (commonly known as Demerol) were discovered to have been tampered with. A diagnostic report showed that the pethidine in the syringe units had been removed and replaced with another solution to give the appearance of normalcy.

Pethidine is a Schedule II drug, which is the category containing the most addictive of the legally dispensable drugs. See Code §§ 79A-805(2) and 79A-807. Therefore, the hospital maintains strict control over its use and supply. The hospital stock of pethidine is kept in a locked "closet" in the hospital's pharmacy. However, supplies of the drug are kept on each floor of the hospital in one or more medication carts at each nursing unit. Pethidine is kept with other narcotics in a locked drawer on the top of each cart. Each nurse on duty has a key to the narcotics drawer of the cart or carts located on the floor she is working. These drugs are audited at each nursing unit every eight hours at the change of shifts. The nurses also keep a record of the particular doses given to patients and when those doses are administered.

In an effort to isolate the problem with the pethidine, the normal procedure for handling drugs on the hospital's fifth floor was altered for April 27, 1979. Instead of several nurses having keys to the two medication carts, only the nurse in charge of the shift had keys to the carts; the extra keys were impounded. Around 3:00 p.m. that afternoon, the fifth floor head nurse and a staff pharmacist opened the medication carts with a master key, counted the narcotics therein and also examined them to determine whether any of the syringes

had been tampered with. Everything was found to have been in order and they remained near the carts until the off-going and on-coming nurses had conducted their audit. The off-going nurse gave the keys to appellant who was the on-coming nurse in charge of the evening shift. Appellant was instructed to allow no one other than herself access to the narcotics.

The head nurse and staff pharmacist returned to the fifth floor around 11:00 p.m. and, again using the master key, counted the narcotics in the medication carts. They discovered four syringes of pethidine had been tampered with; all other narcotics were accounted for during this audit. A later analysis of these four syringes revealed that the pethidine had been removed and replaced with what appeared to be water.

After the adulterated pethidine had been discovered appellant was told that there was a problem and instructed not to leave. At a meeting held shortly thereafter, the hospital administrator asked that everyone involved write a statement. Appellant was too upset to make a statement although she responded in the negative when asked if she had seen anything unusual around the carts or if she had left the carts unlocked or if anyone else had given the medicine. At trial appellant offered no evidence in her own behalf.

1. In both her motion for a directed verdict and motion for new trial, appellant asserts that there was insufficient circumstantial evidence to warrant her conviction since the evidence did not exclude "every other reasonable hypothesis save that of the guilt of the accused." Code § 38-109. She argues that any number of persons could have tampered with the narcotics (a) by duplicating the keys to the narcotics trays, (b) by finding a key that might have been lost or (c) by obtaining one of the master keys or extra keys.

The correct rule for determining the sufficiency of the evidence in convictions based entirely on circumstantial evidence was enunciated by this court in *Smith v. State,* 56 Ga. App. 384 (192 SE 647) (1937): "Whether or not in a given case circumstances are sufficient to exclude every reasonable hypothesis save the guilt of the accused, is primarily a question for determination by the jury. This of necessity is so, for we have no legal yardstick by which we can ordinarily determine what in a given case is a reasonable hypothesis, save the opinion of twelve upright and intelligent jurors. After having heard the witnesses and having observed them testify, they are more capable of judging of the reasonableness of a hypothesis produced by the evidence, or lack of evidence, and the defendant's statement, than is a court of law. However, this court is a court of law, where there appears a hypothesis from the evidence, or from the lack of evidence and the defendant's statement, pointing to the innocence of the

accused, and which tested by all human experience is a reasonable one, may declare it so as a matter of law." *Id.* at 387-388; *Harris v. State,* 236 Ga. 242 (1) (223 SE2d 643) (1976); *Estep v. State,* 154 Ga. App. 1 (267 SE2d 314) (1980).

In addition to that set forth above, the testimony also showed that the master key to the medication carts hung on the back wall of the hospital pharmacy. The hospital pharmacists, student pharmacists, and their helpers — more than 10 persons — all had access to the pharmacy. Prior to the date of the crime, extra keys to the medication carts were available on each floor in the event a key was lost or misplaced. The testimony also indicated that the master key had in the past been used to open any cart for which a nurse was unable to locate a key.

In our view, the evidence concerning access to the medication carts was insufficient to exclude the hypothesis that someone other than appellant was responsible for the disappearance of the pethidine. Accord, *Ivey v. State,* 226 Ga. 821 (4) (177 SE2d 702) (1970); *Kreager v. State,* 148 Ga. App. 548 (252 SE2d 1) (1978); *Wright v. State,* 147 Ga. App. 111 (248 SE2d 183) (1978). "Although the evidence raises a strong suspicion of guilt, it is not sufficient to exclude every other reasonable hypothesis than that of the guilt of [appellant]." *Taff v. State,* 29 Ga. App. 223 (114 SE 816) (1922); *Williams v. State,* 113 Ga. 721 (39 SE 487) (1901). It was, therefore, error to overrule appellant's motion for directed verdict. See *Vilicic v. State,* 152 Ga. App. 207 (1) (262 SE2d 502) (1979).

2. In addition to charging the language of the statute relating to circumstantial evidence (Code § 38-109), the trial court charged as to the necessity of proving the links in a chain of circumstances. Since the charge given by the court is virtually identical to the one approved by our Supreme Court in *Davis v. State,* 74 Ga. 869 (2) (1885), appellant's second enumeration of error is meritless. *Taylor v. State,* 155 Ga. 785 (2) (118 SE 675) (1923); *Gravett v. State,* 150 Ga. 74 (3) (102 SE 426) (1920).

*Judgment reversed. McMurray, P. J., and Banke, J., concur.*

ARGUED JUNE 6, 1980 — DECIDED NOVEMBER 26, 1980 —
REHEARING DENIED DECEMBER 11, 1980.

*Guy B. Scott, Jr.,* for appellant.
*Harry N. Gordon, District Attorney, B. Thomas Cook, Jr., Assistant District Attorney,* for appellee.