75929. CORNISH v. THE STATE.
(369 SE2d 515)

POPE, Judge.

Defendant Cornish was employed as a manager of a Tenneco Oil Company gasoline and convenience store. He was prosecuted and convicted of theft by taking $2,487 in cash belonging to the store which was supposed to have been delivered to a messenger of Wells Fargo Armored Service Corporation and deposited with the bank. Defendant's sole ground for appeal is that the evidence presented at trial was insufficient to support his conviction. We agree.

Defendant's supervisors testified it was the duty of the store manager to assure there was no more than $200 in cash in the cash register at anytime. Any excess cash was to be deposited into an envelope color-coded for that particular day and dropped into a chute into the floor safe. The work day was divided into two shifts, from 6:00 a.m. until 2:00 p.m. and from 2:00 p.m. until the store closed at midnight. Each day an activity report was to be completed showing all sales transactions for the day and including a figure for total cash receipts to be deposited with the bank. At the time the activity report was completed, the manager was to prepare a deposit slip for that day's cash receipts. The period covered by the daily activity report ran from 2:00 p.m. one day until 2:00 p.m. the following day. The Wells Fargo service would pick up the cash to be deposited with the bank anytime between 7:00 a.m. and 3:00 p.m. Thus, the Wells Fargo pick-up would cover the cash from the activity report for the previous activity day.

When the Wells Fargo messenger arrived, the store employee would lock the door of the store. Two keys were required to open the floor safe — one supplied by the store manager and one supplied by the Wells Fargo messenger. Once the safe was opened, the manager was to place all cash dropped into the safe from the previous day (in color-coded envelopes) with the bank deposit slip into a cloth bag, seal the bag with a metal crimper and deliver the bag to the Wells Fargo messenger. The safe, still containing cash envelopes from the current day's activity, would be locked back by use of both keys. Defendant's supervisor admitted he had seen a Wells Fargo messenger simply hand his key to the store manager to open and close the safe, so it might be possible for the store manager to fail to relock that portion of the safe which required a key from Wells Fargo. In that event, the safe could be reopened with only one key.

The evidence showed defendant prepared the daily activity report for the store day commencing 2:00 p.m. December 22, 1986 and ending 2:00 p.m. December 23, 1986. That report reflected cash in the amount of $2,487 to be deposited with the bank. According to regular procedure, that cash was to have been picked up by Wells Fargo on December 24. Wells Fargo employees testified they arrived at the store on December 24 and were told by the store manager that he had no deposit to make for that day because he had no key to the safe. Wells Fargo records show no pick-up was made at the store on December 24. When subsequent bank records reflected no deposit was made on December 24, defendant's supervisor questioned him. According to the supervisor's testimony, defendant told him he had prepared a deposit slip for the 24th and had delivered the cash to the Wells Fargo messenger. No deposit slip was ever located.

The evidence shows defendant was the only employee on duty at

the store during the 6:00 a.m. to 2:00 p.m. shift on December 24 and when the Wells Fargo messenger arrived at 2:08 p.m. However, testimony revealed both the manager (defendant) and assistant manager had a key to the safe. No evidence was presented concerning who opened the safe the previous day or what employee worked at the store from the time the pick-up was made the previous day until the time the store closed at midnight. Thus, it was not shown that defendant had exclusive control over the safe during the critical period.

"To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6. The defendant in this case did not testify and presented no evidence. The state argues the judgment should not be reversed because the defendant "did not exclude every reasonable hypothesis other than that of his own guilt." We assume the state meant to argue the defendant failed to *establish* any other reasonable hypothesis for the loss of the money save that of his own guilt. The burden of proof in a criminal case is on the state to establish the defendant's guilt beyond a reasonable doubt. OCGA § 24-4-5. Thus, the burden to present evidence excluding every other reasonable hypothesis save that of guilt is upon the state. In this case, the defendant did not need to establish an alternative hypothesis for one was already established by the evidence presented by the state.

In support of its argument that the conviction should be upheld for defendant's failure to present evidence of his innocence, the state cites to *Prescott v. State*, 164 Ga. App. 671 (297 SE2d 362) (1982). In *Prescott* this court upheld a conviction for possession of drugs found in the pocket of a coat hanging in a closet because the defendant "made no affirmative showing . . . that anyone other than himself and his wife had had actual access to the bedroom or its closet during several days or weeks prior to the discovery of the pills." Id. at 672. However, in *Prescott* there was testimony that the bedroom's principal alternative occupant had been out of town for at least three weeks before the date in question. Therefore, the evidence eliminated the only other individual reasonably having access to the closet. Because the defendant failed to make an affirmative showing to rebut the state's prima facie case that no other person had actual access to the closet, the evidence thus excluded every other reasonable hypothesis save that of the defendant's guilt. In the case now before us, the evidence showed both the manager and assistant manager had a key to the safe. Unlike the factual situation in *Prescott*, the state did not present evidence which would eliminate the possibility that some other person had access to the safe during the critical period before the money was discovered missing.

The facts of the case now before us are similar to those presented

in *Wood v. State*, 156 Ga. App. 810 (275 SE2d 694) (1980), in which the conviction of a nurse for taking narcotics from a locked hospital cart was reversed because the evidence showed the master key to that cart was accessible to a number of other persons in the hospital at the time the loss occurred. In *Wood* we found the evidence was insufficient to exclude the reasonable hypothesis that someone other than the defendant was responsible for the disappearance of the drugs. Likewise, in this case the state failed to exclude the reasonable hypothesis that someone other than defendant was responsible for the loss of the employer's cash. The burden was upon the state to eliminate such a reasonable hypothesis. The burden was not upon the defendant to present evidence in support of an alternative reasonable hypothesis which was already raised by the state's evidence.

Defendant concedes that the evidence may be sufficient to hold him civilly liable for the loss of his employer's funds. While the circumstantial evidence raises a suspicion of defendant's guilt, it was not sufficient to exclude every other reasonable hypothesis. See *Hall v. State*, 155 Ga. App. 211 (270 SE2d 377) (1980).

*Judgment reversed. McMurray, P. J., and Benham, J., concur.*

DECIDED MAY 13, 1988.

*John O. Ellis, Jr.*, for appellant.
*Robert E. Wilson, District Attorney, Helen A. Pryles, J. Michael McDaniel, Assistant District Attorneys*, for appellee.