A04A1971. STACK-THORPE v. THE STATE.
(608 SE2d 289)

ELLINGTON, Judge.

A Houston County jury convicted Sandra Stack-Thorpe of embezzling funds from the City of Perry from July 1997 through July 2000. Stack-Thorpe was also convicted of falsifying official documents and submitting false financial reports. She appeals from the

denial of her motion for new trial, alleging the trial court made several erroneous rulings and arguing that she was entitled to a directed verdict of acquittal on the charges. Finding no error, we affirm.

The evidence presented at trial, viewed in favor of the jury's verdict,[1] showed that the funds at issue were payments made by citizens to the City of Perry Police Department on traffic tickets and other fines. When police department employees accepted a payment on a fine, they placed the money in an envelope, recorded the payment amount on the outside of the envelope, sealed the envelope, and locked it in a safe. They also recorded the payment in a separate receipt book.

Stack-Thorpe was employed in the finance department of the City of Perry from April 1995 until July 2000. She was solely responsible for collecting the fine payments from the police department, matching the envelopes to entries in the receipt book, opening the envelopes and counting the money, recording the total amount of fines collected, transporting the money to the tax and utility department to be deposited, and preparing financial reports about the fines collected. Stack-Thorpe usually took the payments to be deposited on the same day that she collected them from the police department, but she sometimes stored the payments in a safe near her office for a few hours during the day or overnight.

In early 2000, the city manager decided to rotate the department's employees among different jobs in order to cross-train the employees and to prevent them from abusing their positions. He testified that Stack-Thorpe had expressed reluctance to participate in the reorganization, arguing that her job was so complicated that it would be difficult to train the other employees and that she was the only one who would be able to answer auditors' questions about the financial records. The city manager testified, however, that Stack-Thorpe's job responsibilities were not complicated, difficult, or confusing, and Stack-Thorpe even admitted at trial that her job was "pretty simple [and] straightforward." When the city manager insisted that Stack-Thorpe participate in the employee rotation program, she quit her job. Shortly thereafter, following a routine audit, the city discovered that approximately $95,000 in fines paid to the police department had not been deposited or recorded as revenue between July 1997 and July 2000. The shortfalls abruptly stopped after Stack-Thorpe's resignation.

The Georgia Bureau of Investigation (GBI) investigated and found that Stack-Thorpe had deposited $24,920 in cash into a bank

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

account she shared with her husband and that they had made several cash purchases during her employment with the city. A GBI agent also testified that Stack-Thorpe's total income during that period exceeded the combined reported net income of her and her husband by over $46,000 and that this additional income could not be attributed to any known source. According to the GBI, after Stack-Thorpe left her job in July 2000, her large cash deposits stopped. The GBI also investigated the other city employees who had access to the safe in Stack-Thorpe's office, where she sometimes stored the funds, but eliminated them from suspicion after finding no evidence that the employees had unusual financial transactions or that they were in any way involved in the thefts. These employees were still working for the city at the time of the trial.

The evidence also showed that, before the thefts started in 1997, Stack-Thorpe was struggling financially and was finding it difficult to provide for her newborn baby. Around June 2000, however, just before Stack-Thorpe left her job, she repeatedly remarked to a co-worker that she had an extra $1,000 to $3,000 in her bank account at the end of each month.

In October 2001, the State indicted Stack-Thorpe on one count of felony theft by taking, two counts of submitting fraudulent writings, and one count of income tax evasion. The State subsequently issued a superceding indictment on July 29, 2003, charging her with one count of theft by taking by a fiduciary (also a felony)[2] and the two fraud charges, but dropping the tax evasion charge. Stack-Thorpe filed a motion for plea in bar on the second indictment, contending the four-year statute of limitation had run on any unlawful transaction occurring before July 1999 and asking the court to dismiss any charges based upon those transactions. Although the trial court conducted a brief hearing on the motion during the trial, it never expressly ruled on the motion. A jury ultimately convicted Stack-Thorpe on all three counts of the indictment.

1. On appeal, Stack-Thorpe argues that the four-year statute of limitation[3] barred the State from prosecuting her for any theft that occurred prior to July 1999. The indictment in this case, however, charged Stack-Thorpe with a single count of theft by taking by a fiduciary over a specific period of years, not with several counts of smaller, individual thefts. "[W]here there [has been] a continuous series of conversions of property of the owner entrusted to the defendant, the offense may be charged in a single count of the indictment. Such series of transactions constitute . . . a single

---

[2] See OCGA § 16-8-12 (a) (3) (which enhances penalties for theft by taking by a fiduciary).
[3] OCGA § 17-3-1 (c).

embezzlement." (Citation omitted.) *Simmons v. State*, 79 Ga. App. 390, 393-394 (53 SE2d 772) (1949) (finding that, otherwise, there might be almost as many counts as dollars embezzled).

Since the embezzlement was charged as a single crime, the remaining issue is whether the four-year statute of limitation had expired prior to the 2003 indictment. "The key to determining when the statute of limitation begins to run is to find when the offender or offense became known," because the statute of limitation is tolled until the offense is discovered. (Citation omitted.) *State v. Brannon*, 154 Ga. App. 285, 286-287 (2) (267 SE2d 888) (1980). In this case, it is undisputed that the embezzlement was not discovered until mid-July 2000, after Stack-Thorpe resigned. Because the State indicted Stack-Thorpe within four years of this date, the prosecution on the indictment was not time-barred.[4]

2. Stack-Thorpe contends the trial court abused its discretion when it refused to allow her accounting expert to give his opinion, based upon his examination of the finance department's accounting records and procedures, that discrepancies in the records appeared to be due to accounting errors, not employee theft. One of Stack-Thorpe's defenses was that the funds at issue had not been stolen, but were simply lost as a result of poor accounting procedures and employee errors. During the State's case-in-chief, defense counsel thoroughly cross-examined the State's witnesses on the finance department's accounting procedures, discrepancies in the records, the alleged lack of oversight by department officials, and audit findings which appeared to conflict with other prosecution evidence. Then, during the defense's case, Stack-Thorpe's expert testified extensively about problems with the city's financial records and accounting procedures before giving his opinion, without objection, that the discrepancies in the records were more indicative of accounting errors than employee theft. The expert explained his opinion, testifying that certain fluctuations in the financial records appeared to be due to accounting errors and would not have occurred if an employee had been stealing money from the city. A few moments later, defense counsel restated the expert's opinion, then started to ask another question. The trial court interrupted, however, and it is unclear from the record what counsel was going to ask the witness.

During a brief bench conference, the court expressed concern that the expert's opinion testimony about whether the discrepancies were due to errors or theft would invade the province of the jury. The court told counsel, however, that he could continue questioning the

---

[4] Based upon these findings, Stack-Thorpe's remaining arguments regarding the validity of the 2003 indictment are moot.

expert about the discrepancies in the records and whether they appeared to be due to accounting errors. Counsel responded that he would "move on" and immediately changed his line of questioning.

Without deciding whether the expert's opinion testimony invaded the province of the jury or whether the trial court, in fact, prevented the expert from testifying, we find that Stack-Thorpe has failed to demonstrate an abuse of the court's discretion. Since the expert had just stated and explained his opinion on the "errors versus theft" issue, the allegedly excluded testimony would have been merely cumulative. Therefore, the trial court did not abuse its discretion in refusing to allow him to repeat his opinion. *Garland v. State*, 256 Ga. App. 313, 317 (4) (568 SE2d 540) (2002) ("a trial court does not abuse its discretion in excluding cumulative evidence") (punctuation and footnote omitted).

3. Stack-Thorpe argues the trial court erred in allowing evidence that her husband had filed for bankruptcy in November 2000, just four months after Stack-Thorpe left her job with the city. A GBI investigator testified that Stack-Thorpe had told her about the bankruptcy during the theft investigation. Stack-Thorpe objected to the investigator's testimony, contending it was irrelevant and impermissibly placed her character in issue. The trial court found the evidence that Stack-Thorpe's husband was experiencing serious financial difficulties was relevant to her motive for embezzling the funds.

The trial court has wide discretion in determining whether evidence is relevant and should be admitted, and this Court will not disturb the exercise of that discretion absent evidence of its abuse. *Bradford v. State*, 221 Ga. App. 232, 234 (2) (471 SE2d 248) (1996); *Scott v. State*, 178 Ga. App. 222, 225 (4) (343 SE2d 117) (1986). Further, even if this evidence somehow reflected poorly on Stack-Thorpe's character, "[e]vidence which is relevant to an issue in a case is not rendered inadmissible by the fact that it incidentally puts the defendant's character in issue." (Citation omitted.) *Johnson v. State*, 260 Ga. 457, 458 (2) (396 SE2d 888) (1990). We find the trial court did not abuse its discretion in admitting this evidence after finding it relevant to Stack-Thorpe's motive.[5]

4. Stack-Thorpe claims the trial court abused its discretion when it refused to allow her to cross-examine the city manager and a GBI auditor.[6] Generally, "the scope of cross-examination is within the

---

[5] Because the evidence was properly admitted, it follows that the trial court did not err in refusing to grant Stack-Thorpe's motion for a mistrial or her request for curative instructions.

[6] Although Stack-Thorpe attempts to raise an issue in her brief regarding the cross-examination of an accountant who performed an audit for the city, this issue is not included in her enumeration of errors and is, therefore, waived. *Pier 1 Imports v. Chatham County Bd. of*

sound discretion of the trial court, and in the absence of an abuse thereof, will not be disturbed by this Court." (Citation and punctuation omitted.) *Frazier v. State*, 263 Ga. App. 12, 14 (2) (587 SE2d 173) (2003).

(a) Stack-Thorpe complains that the trial court improperly prevented her from cross-examining the city manager about the city's insurance policy, which allegedly covered losses due to thefts but did not cover losses due to poor accounting procedures. She claims that the city manager's testimony would have demonstrated that the city only pursued theft charges against her because such prosecution was a condition precedent to collecting under the insurance policy. The record, however, does not support these contentions.

Before opening statements, the court prohibited defense counsel from mentioning the city's insurance policy until counsel had confirmed that the insurance policy, in fact, included such a limitation. At trial, defense counsel proffered the city manager's testimony, during which the city manager testified that he did not know if the policy excluded payment for nontheft-related losses. At that point, counsel stopped questioning the city manager and admitted that he would have to call a different witness to testify about the policy's alleged limitations. Counsel never called the alternate witness or tendered a copy of the insurance policy.

Under these circumstances, because Stack-Thorpe failed to demonstrate that the insurance policy included such limitation and the city manager testified that he had no personal knowledge of the alleged limitation, there was no basis upon which to cross-examine the city manager on this issue. To the extent the trial court restricted cross-examination of this witness, there was no abuse of discretion. See *Pollard v. State*, 238 Ga. App. 253, 257 (5) (518 SE2d 463) (1999) (trial court did not abuse its discretion in restricting the cross-examination of a witness who had no knowledge of the subject on which the defendant sought to cross-examine her).

(b) Stack-Thorpe also complains that the trial court prohibited defense counsel from cross-examining a GBI auditor about Stack-Thorpe's alternative sources of income which might explain some of her excessive cash deposits. Apparently, before trial, counsel had provided the auditor with receipts and other documents showing cash payments to Stack-Thorpe and her husband. The auditor testified

---

*Tax Assessors*, 199 Ga. App. 294, 296 (2) (404 SE2d 637) (1991) (a party may not enlarge an enumeration of error on appeal by arguing issues in its brief that were not enumerated). Even if it had been properly enumerated as error, however, the issue was still waived, because the brief failed to show, by citation to the record, that the trial court actually limited the cross-examination of this witness. See Court of Appeals Rule 27 (c) (3) (i) (this Court will not consider an enumerated error unless it is supported by a specific reference to the record).

that he had reviewed the documents prior to trial, but that there was no way to verify their authenticity. Still, counsel attempted to cross-examine the auditor about his conclusions, based upon his review of the documents, about how much of Stack-Thorpe's suspicious cash deposits may have been attributable to sources other than the city's missing funds. The State objected, arguing that the materials which the auditor had reviewed were not in evidence. The trial court sustained the State's objection, but gave counsel permission to recall the auditor for cross-examination on this issue after defense witnesses had testified. Counsel subsequently presented the testimony of six witnesses who testified that they had given money to Stack-Thorpe and her husband between 1997 and 2000. Stack-Thorpe also testified that she had received money from family members and other sources that she had not reported as income. Even so, counsel did not recall the auditor to cross-examine him about these alternative sources of income or proffer the auditor's testimony.

Accordingly, the record does not support Stack-Thorpe's contention that the trial court prohibited counsel's cross-examination of this witness. Further, because Stack-Thorpe failed to recall the witness for cross-examination or proffer the testimony she claims was improperly excluded, there is nothing for this Court to review. See *Bentley v. State*, 262 Ga. 801, 802 (3) (426 SE2d 364) (1993) (after the trial court properly ruled that the defendant could not pursue a line of questioning until he produced certain evidence, the defendant failed to follow up by introducing the evidence, leaving nothing to review on appeal); *Thompson v. State*, 187 Ga. App. 152, 153-154 (369 SE2d 523) (1988) (defendant's failure to proffer evidence that he claims was wrongfully excluded leaves nothing for this Court to review).

5. Stack-Thorpe claims she was entitled to a directed verdict of acquittal on the theft by taking charge, arguing the State's circumstantial evidence was insufficient to exclude all reasonable hypotheses other than her guilt.

> The standard of review for considering the sufficiency of the evidence and for reviewing the denial of a motion for a directed verdict of acquittal is the same. We view the evidence in the light most favorable to the verdict, and [Stack-Thorpe] no longer enjoys the presumption of innocence. We do not weigh the evidence or determine whether a witness is credible, but only determine whether the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that [Stack-Thorpe] was guilty of theft by taking. For a conviction based on circumstantial evidence to stand, the facts must prove not only the hypothesis of guilt, but

must exclude every other reasonable hypothesis but the guilt of the accused. The evidence need not exclude every inference or hypothesis. Whether the circumstances exclude every reasonable hypothesis except for [Stack-Thorpe's] guilt was a question for the jury.

(Citations and punctuation omitted.) *Massey v. State*, 269 Ga. App. 152, 155-156 (4) (603 SE2d 431) (2004). See also OCGA § 24-4-6; *Wood v. State*, 156 Ga. App. 810, 811 (1) (275 SE2d 694) (1980) (the question of whether an alternate hypothesis for a crime is reasonable is for the jury, as is the determination of whether the State excluded all reasonable hypotheses except the defendant's guilt).

In this case, it is undisputed that at least four other employees had access to the finance department safe, where Stack-Thorpe sometimes kept fines until they could be counted and recorded. According to Stack-Thorpe, this evidence presented a reasonable explanation for the missing funds, i.e., that someone else took the money, and she claims the State failed to eliminate this possibility at trial. In arguing that she was entitled to a directed verdict of acquittal, Stack-Thorpe relies on *Cornish v. State*, 187 Ga. App. 140, 143 (369 SE2d 515) (1988), in which this Court reversed the theft conviction of a store clerk whose fellow employees also had access to the store's safe. In *Cornish*, this Court found that, because the defendant's conviction was based entirely on circumstantial evidence and the State had failed to present *any* evidence to exclude the possibility that a different employee had taken the money, the conviction must be reversed. Id.

This case is distinguishable from *Cornish*, however, because the State showed that the GBI had investigated each of the other employees who had access to the safe and that there was no evidence that they were involved in the thefts. Further, the evidence showed that the thefts stopped abruptly after Stack-Thorpe resigned, even though the employees at issue still worked in the finance department. Therefore, there was evidence from which the jury could conclude that the only reasonable explanation for the missing funds was that they had been stolen by Stack-Thorpe.

The trial court is only required to direct a verdict of acquittal when the evidence presented demands it as a matter of law. *Cheek v. State*, 170 Ga. App. 230 (316 SE2d 583) (1984). Because the State in this case presented evidence to exclude the possibility that another employee took the funds, the trial court did not err in denying Stack-Thorpe's motion for a directed verdict of acquittal. Id. at 231-232 (1) (defendant was not entitled to a directed verdict, because the State presented evidence to dispute defendant's explanation for where he had obtained stolen property).

6. Stack-Thorpe contends the trial court erred in refusing to give her requested jury instruction on "equal access," arguing the evidence showed that other employees had access to the finance department safe. The proposed instruction was based on this Court's holding in *Cornish*, supra, and read as follows: "The Defendant contends that other persons had access to the alleged missing funds. In that connection, where it is proven that other parties has [sic] equal access to the alleged missing funds, the Defendant is entitled to an acquittal." This instruction, however, is an incomplete statement of the *Cornish* holding. As noted above, this Court held that a defendant is entitled to a directed verdict of acquittal on a charge of theft by taking when he did not have exclusive control over the stolen property *and* the State fails to present any evidence to exclude the possibility that someone other than the defendant took the property at issue. *Cornish v. State*, 187 Ga. App. at 142-143.

"[A] jury instruction must be adjusted to the evidence and embody a correct, applicable, and complete statement of law. When any part of the requested charge is confusing, inapt, incorrect, or not authorized by the evidence, denial of the request is proper." (Citation omitted.) *Jones v. State*, 242 Ga. App. 357, 359 (3) (529 SE2d 644) (2000). Because Stack-Thorpe's proposed jury instruction was not a complete and accurate statement of the law and was not adjusted to the facts in evidence, the trial court did not err in refusing to give the charge.

Further, the trial court instructed the jury on reasonable doubt, the State's burden of proof, and the jury's role in considering circumstantial evidence. "[V]iewing the entire charge as a whole, it is apparent that the charge was a full and fair charge covering all issues to be resolved by the jury." (Citation and punctuation omitted.) *Marshall v. State*, 197 Ga. App. 762, 763 (2) (399 SE2d 555) (1990). There was no error.[7]

7. Stack-Thorpe also challenges her convictions for falsifying various financial reports and certificates. She claims that there was no evidence that she "knowingly and/or willfully" falsified the documents. The State, however, presented sufficient evidence to prove that Stack-Thorpe intentionally embezzled funds from the city over a three-year period. See Division 5, supra. It is undisputed that Stack-Thorpe was solely responsible for completing and submitting the documents at issue based upon her computations of the fines collected

---

[7] There is also no merit to Stack-Thorpe's claim that the court was required to give an "equal access" charge because it was her sole defense. She admits in her brief that another defense was her contention that the money at issue was lost due to the city's poor accounting practices, and the transcript clearly shows that she presented this defense at trial. See Division 2, supra.

by the police department. Further, there is no dispute that the total fines reported by Stack-Thorpe in these documents did not match the amount recorded in the police department's receipt book.

"Intent is a question of fact for jury resolution [and] may be proven by circumstantial evidence, by conduct, demeanor, motive, and all other circumstances." (Citations and punctuation omitted.) *Shores v. State*, 240 Ga. App. 189, 192 (1) (522 SE2d 515) (1999). We find the State presented sufficient evidence for the jury to find that Stack-Thorpe intentionally falsified the documents in order to conceal her embezzlement.

8. Stack-Thorpe contends the trial court erred when it gave the pattern jury instruction on witness impeachment. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, §§ 1.31.40–1.31.70 (3rd ed. 2003). Although Stack-Thorpe complains that she did not request the charge, the record shows that she filed a written request for an impeachment charge that tracked the language of OCGA § 24-9-83. There is no transcript of the charge conference in the record, but the transcript shows that the trial court conducted an off-the-record bench conference immediately before giving the impeachment charge at issue. Counsel did not object on the record to the court's impeachment charge following the bench conference. Then, after finishing the jury instructions, the court asked the parties if they had any objections to the charges given. Counsel did not object or reserve objections, but told the court, "I think you included everything." Further, counsel did not request an opportunity to reargue the facts in light of the impeachment charge. The next day, after the jury returned its guilty verdict, counsel informed the court that he wanted to reserve his objections to the jury charge.

Contrary to Stack-Thorpe's contention on appeal, counsel clearly had the opportunity to object to the charge before the jury's verdict. Counsel not only failed to object to the charge, he affirmatively indicated to the court that he had no objections when asked. Under these circumstances, the objection to the charge was waived. *Leggon v. State*, 249 Ga. App. 467, 469-471 (2) (549 SE2d 137) (2001) (counsel waived a claim of error when he failed to object to the jury charge after the court specifically asked if he had objections); see also *Jones v. State*, 177 Ga. App. 531, 532 (2) (339 SE2d 786) (1986) (when the court gives an unanticipated charge, the proper remedy is for the defendant to request an opportunity to reargue the case); but cf. *Goins v. State*, 177 Ga. App. 536, 536-537 (1) (339 SE2d 790) (1986) (if the defendant timely objects to the court's charge, the failure to request an opportunity to reargue the case does not waive the objection). Further, having reviewed the entire record, we find no substantial error in the charge which was harmful as a matter of law and would necessitate our review in the absence of a timely objection. OCGA § 5-5-24.

9. Stack-Thorpe contends the trial court erred in refusing to allow her expert witness to review certain audit documents. The documents had been created by an accounting firm which annually audited the city's accounts and which originally discovered that the funds at issue were missing. This contention lacks merit.

During a pretrial hearing, defense counsel acknowledged that neither the city nor the State had copies of the audit documents, and asked the court to order the accounting firm to make the audit documents available to Stack-Thorpe's expert witness for review.[8] The State confirmed that it did not have copies of the audit documents, and told the court that it did not intend to use the documents at trial or call the accountant who conducted the audit as a witness. Instead, the State intended to rely on evidence collected by the GBI during its investigation, such as Stack-Thorpe's personal financial records, as well as the police department's receipt book and the records that Stack-Thorpe completed for the city. The State assured the court that defense counsel would have full access to this evidence, and, if it obtained a copy of the audit documents, counsel would have access to those, also. The trial court ruled that it would not order the accounting firm to turn over its audit documents at that time, but also ruled that, if the State changed its position and decided to call the accountant as a witness at trial, it would revisit the discovery issue.

Later, after another prosecutor took over the case, the State notified the defense that it intended to call the accountant as a witness. Counsel moved the court to order the State to produce the audit documents. The trial court granted the motion, giving the defense's expert access to "all records of the City of Perry which are relevant to the defense of her case" and all of the accounting firm's records relating to its annual audits of the city.

At trial, Stack-Thorpe did not object on the record to the State's use of this evidence based upon a discovery violation or otherwise contend that the defense had been denied access to the requested materials. In fact, the defense expert testified that he had had the opportunity to thoroughly review the audit documents and financial records at issue. The expert also gave extensive testimony about his review of these materials and his opinions regarding what the evidence showed. Accordingly, regardless whether the trial court erred when it initially denied counsel's discovery motion, the record

---

[8] Counsel also moved for a court order allowing the expert witness access to the city's financial records. Counsel admitted, however, that the expert would not know what records he would need to look at until he had the opportunity to review the audit documents. The court told counsel that he would need to file another discovery motion once he determined what specific information was needed from the city. As shown below, the court subsequently granted the defense access to all of the city's records which were relevant to its case.

shows that the expert had access to and reviewed the documents prior to trial. Further, we find Stack-Thorpe has failed to demonstrate any harm arising from the delay in access to this evidence. *Sledge v. State*, 223 Ga. App. 488, 489 (3) (477 SE2d 898) (1996); see also *Tucker v. State*, 222 Ga. App. 517, 518 (3) (474 SE2d 696) (1996) (evidence should only be excluded due to a discovery violation when the defendant has demonstrated that he has been prejudiced and that the State acted in bad faith).

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED DECEMBER 8, 2004 —

*Waymon S. Harrell*, for appellant.

*Kelly R. Burke, District Attorney, Jason E. Ashford, Assistant District Attorney*, for appellee.