**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 16, 2013**

# In the Court of Appeals of Georgia

A13A0012. PENNINGTON v. THE STATE.

ELLINGTON, Presiding Judge.

A Dawson County jury found Warren Pennington guilty of five counts of felony theft by conversion, OCGA § 16-8-4 (a); and six counts of felony theft by taking, OCGA § 16-8-2.[1] He appeals from the denial of his motion for new trial,[2] contending that the trial court erred in denying his motion to quash the indictment. For the following reasons, we reverse Pennington's convictions on Counts 3 through 8 and 10 of the indictment. We also conclude that Pennington is entitled to a new trial

---

[1] The State indicted Pennington on September 13, 2010, at which time OCGA § 16-8-12 (a) (1) provided that a theft of property valued at more than $500 was a felony. The Georgia General Assembly amended that provision in 2012 to raise the minimum value for felony punishment to $25,000. See Ga. L. 2012, p. 709, § 3.2.

[2] After this Court dismissed Pennington's original direct appeal as untimely, the trial court granted Pennington's motion for an out-of-time appeal.

on Counts 1, 2, 11, and 12,[3] so we reverse his convictions on those counts and remand this case to the trial court.

1. Pennington contends that the trial court erred in denying his demurrer to Counts 1 through 8, 10, and 11 of the indictment,[4] arguing that the indictment shows on its face that the prosecution of those offenses was barred by the applicable four-year statute of limitation.[5] We agree in part.

"In criminal cases, the statute of limitation[ period] runs from the time of the criminal act to the time of indictment." (Footnote omitted.) *Jenkins v. State*, 278 Ga. 598, 601 (1) (A) (604 SE2d 789) (2004). "If it appears on the face of the indictment that the statute of limitation has run, the indictment is fatally defective and subject to demurrer, unless the indictment also alleges one or more of the exceptions which would remove the bar of the statute." (Footnote omitted.) *State v. Barker*, 277 Ga.

---

[3] The jury acquitted Pennington on Count 9 of the indictment.

[4] Pennington does not challenge the court's denial of his demurrer to Count 12 of the indictment, which alleged that he committed theft by conversion in 2007, on statute of limitation grounds.

Also, because the jury acquitted Pennington on Count 9 of the indictment, the issue of whether the statute of limitation barred prosecution on that count is moot. See *Martinez v. State*, 306 Ga. App. 512, 522 (2), n. 20 (702 SE2d 747) (2010).

[5] See OCGA § 17-3-1 (c) (prosecution for these felonies must be commenced within four years after the commission of the crime).

2

App. 84, 87 (3) (625 SE2d 500) (2005). See *Jenkins v. State*, 278 Ga. at 604 (1) (B) (If the State intends to rely on an exception to the running of the statute of limitation period, it must allege such exception in each count of the indictment to which it applies.).[6] One of these exceptions provides that the statute of limitation period is tolled from the time the illegal act is committed until the time the crime is discovered. OCGA § 17-3-2 (2); *Stack-Thorpe v. State*, 270 Ga. App. 796, 799 (1) (608 SE2d 289) (2004).[7] "The burden is unquestionably upon the State to prove that a crime occurred within the statute of limitation, or, if an exception to the statute is alleged,

---

[6] See also *Zabain v. State*, 315 Ga. App. 749, 752 (3) (728 SE2d 273) (2012) (An indictment charged the defendant with committing misdemeanor sexual battery more than two years earlier. Because the indictment did not allege that any exception to the two-year statute of limitation applied, the indictment was fatally defective and the prosecution was barred.).

[7] See *State v. Campbell*, 295 Ga. App. 856, 857-858 (673 SE2d 336) (2009) ("The crime victim's knowledge of the crime is imputed to the State; therefore, . . . the State ha[s] the burden to prove that the [victim's] first knowledge of the alleged theft occurred in the four years prior [to the indictment]. . . . [We emphasize, however, that the] tolling period is not extinguished when the injured party *should have known*; rather, it ends when the injured party has actual knowledge of the crime. . . . [Thus, the] statute of limitation does not run while the crime or the person who committed the crime is 'unknown' – it does not say 'and could not have been discovered through the exercise of reasonable diligence.' [Thus, even if the alleged crimes] '*could have* easily been noticed,' that is not the applicable standard.") (citation, punctuation and footnotes omitted; emphasis in original).

to prove that the case properly falls within the exception." (Citation and punctuation omitted.) *Martinez v. State*, 306 Ga. App. 512, 522 (2) (702 SE2d 747) (2010).

When an appellate court reviews a trial court's decision on a defendant's motion to quash an indictment or a plea in bar based upon the expiration of the statute of limitation, "we conduct a de novo review of the legal issues. Further, we must accept the trial court's findings on disputed facts and witness credibility unless those findings are clearly erroneous." (Citations omitted.) *State v. Bair*, 303 Ga. App. 183 (692 SE2d 806) (2010).

The record shows the following relevant facts. Pennington was an accountant whose Dawson County business provided, among other things, payroll and tax-related services for numerous clients. As part of these services, Pennington calculated the amount of monthly or quarterly payroll taxes his clients owed to the government, and his clients sent that amount of money to him to be deposited into a payroll escrow account and held there until the taxes became due, at which time Pennington was supposed to pay the taxes.

In May 2008, Pennington contacted the Dawson County Sheriff's Office and reported that an employee had been stealing money from the payroll escrow account. While investigating that report, an officer discovered not only that the employee had

stolen approximately $90,000 from the account by electronically transferring funds into private accounts owned by her friends,[8] but that, since February 2006, Pennington had *also* been illegally withdrawing funds from the payroll escrow account for his personal use and unrelated business expenses. Further, as a result of the illegal depletion of the payroll escrow account, Pennington had repeatedly failed to pay his clients' payroll taxes.

The investigator arrested Pennington, and, on December 4, 2009, the State filed an accusation charging Pennington with four counts of theft by conversion, each alleging that he unlawfully committed the following act:

> having lawfully obtained funds, to wit: U. S. Currency, the property of Warren Pennington's Payroll Escrow Account, under an agreement to make a specified application of said funds, knowingly convert[ed] said property to his own use in violation of such agreement by diverting money from the payroll escrow account into his operating [or personal] account, said funds having a value of more than $500.00.

---

[8] The evidence showed that the employee began stealing money from the escrow account in July 2006. Following her 2008 arrest, she pled guilty to felony theft by taking and was sentenced to 35 years probation and ordered to pay restitution. The employee testified for the State at Pennington's trial.

Count 23 alleged that Pennington committed this crime between February 25, 2006, and December 28, 2006, while Count 24 alleged that the crimes occurred between April 5, 2006 through December 28, 2006. Similarly, Count 25 alleged that the crimes occurred between January 3, 2007 and December 21, 2007, while Count 26 alleged that the crimes occurred between January 4, 2007 and November 9, 2007. None of the counts named any victim other than "Warren Pennington's Payroll Escrow Account," identified any person or entity that had contributed to that account, or included any explanation of how or why the counts charging the same crimes within overlapping date ranges (i.e., Counts 23 and 24, and Counts 25 and 26) were distinguishable from one another. Pennington waived arraignment on the accusation on January 12, 2010.

Eight months later, on September 13, 2010, the State filed an indictment against Pennington. Counts 1, 2, 10, and 11 charged him with theft by conversion, alleging that,

> having lawfully obtained funds of another under an agreement and other legal obligation to make a specified application of such funds, [Pennington] did unlawfully and knowingly convert the funds to his own use in violation of the agreement and legal obligation, to wit: did take funds deposited into a payroll escrow account for the purpose of paying employees and state and federal payroll taxes and converted said funds to his own use and the use of his firm . . . , said funds having an

6

aggregate value of more than $500.00 and having been deposited by one or more of the following: Midtown Optical, Inc.[,] Abbott Creek Nurseries, Inc.[,] Wild Willy's RV[, and] Horizon Controls, Inc.

In addition, a fifth charge, Count 12, alleged similar facts, adding that some of the funds had been deposited for the purpose of contributing to employee retirement plans and that the funds had been deposited by one or more of the businesses named above or ten other named businesses. In contrast, Counts 3 through 9 of the indictment charged Pennington with theft by taking, alleging that,

> being in lawful possession of property of another, to wit: U.S. Currency, did unlawfully appropriate said property with the intention of depriving the owner of the property, said property having a value of more than $500.00 and having been appropriated by means of an electronic transfer when it had been deposited into a payroll escrow account by one and [sic] more of the following for the purpose of paying employees and state and federal payroll taxes: Midtown Optical, Inc.[,] Abbott Creek Nurseries, Inc.[,] Wild Willy's RV[, and] Horizon Controls, Inc.

Regarding the dates that the alleged crimes occurred, Counts 1 and 2 alleged that Pennington committed the thefts by conversion within a range of dates in 2004 and 2005, respectively, but that "said offense[s] [were] unknown until May 22, 2008." Counts 3 through 8 of the indictment charged that Pennington committed theft by

taking on specific dates in February, March and April 2006, while Counts 10 and 11 alleged that Pennington committed theft by conversion between February 22 and May 19, 2006, and between July 31, 2006, and December 28, 2006, respectively. Finally, Count 12 alleged that he committed theft by conversion between January 31, 2007, and December 21, 2007. On November 22, 2010, Pennington pleaded not guilty to the indictment and waived formal arraignment.

On December 3, 2010, Pennington filed a motion to quash[9] the indictment, asserting that it failed to adequately charge him with any criminal offense and that it charged him with crimes for which prosecution was barred by the applicable four-year statute of limitation. He also claimed that, due to the language of the indictment, he would be unable to defend himself against allegations that he committed theft of "uncertain amount[s]" from "uncertain victim[s]." Further, in his attached brief, he stated that "*[t]he purpose of this motion [to quash] is limited to proving* that even if it were true that [he] transferred [the funds at issue] from the payroll escrow account

---

[9] "A motion to quash is the equivalent of a general demurrer, attacking the validity of the indictment." (Citation omitted.) *State v. Brown*, 250 Ga. App. 376, 378 (1) (551 SE2d 773) (2001).

for his own use, *no crime took place*."[10] (Emphasis supplied.) Based upon these contentions, he asked the trial court to grant his motion and to dismiss the indictment.[11]

On the day of trial, Pennington asked for the court to conduct a hearing on his motion to quash. In addition to arguing that the statute of limitation barred his prosecution on the indictment,[12] Pennington argued that the court should quash the indictment because it did not provide sufficient notice to him of the offenses for which he was charged and did not protect him from double jeopardy, in part because of the broad range of dates given in the theft by conversion counts and the number of alleged victims identified in each count. The trial court denied the demurrer as to

---

[10] In support of this assertion, he argued that the State had miscalculated the amount of money he had allegedly transferred out of escrow account for his personal use and had failed to give him credit for the amount of money he had personally deposited into the account, which he claimed exceeded the amount he was charged with stealing.

[11] Pennington's motion to quash did not include a request for a pre-trial evidentiary hearing.

[12] We note that, during the hearing, Pennington did not ask for the opportunity to present witnesses in support of his motion; did not assert that the State was required to present witnesses during the hearing to show that the prosecution on the indictment was not barred by the statute of limitation or cite to any authority on that issue; and did not object to the prosecutor stating in her place what the evidence was likely to show at trial.

9

each of Pennington's arguments except as to the statute of limitation issue and stated that it was going to reserve ruling on that issue until the State had presented its case-in-chief and rested, at which time it would decide the statute of limitation issue on the evidence that had been presented.

The trial proceeded with the State's presentation of evidence, which showed that, beginning in 2004, Pennington repeatedly withdrew or transferred funds from the payroll escrow account to pay his personal and/or unrelated business expenses. As a result of these illegal withdrawals, the payroll escrow account often held insufficient funds for Pennington to pay his clients' payroll taxes as they became due. Because of Pennington's failure to pay the taxes, his clients started receiving delinquent tax notices from the Internal Revenue Service ("IRS"), even though they had paid the money they owed to Pennington, to be deposited in the payroll escrow account, months or even years before. Upon receiving these notices, the clients contacted Pennington, who offered a variety of excuses for the notices, such as claiming that there had been clerical errors, that the IRS had made mistakes, that the payroll tax checks and IRS notices had crossed in the mail, etc. Pennington consistently assured his clients that he would take care of the problems with the IRS, and this temporarily abated his clients' concerns. It was not until after Pennington

10

reported his employee's theft to the Dawson County Sheriff's Office in May 2008 that the official investigation and a private audit of his financial records revealed to some of his clients that he had failed to pay their payroll taxes because he had been illegally withdrawing and transferring funds from the payroll escrow account for several years.

After the State finished presenting its case-in-chief, Pennington made a motion for a directed verdict of acquittal on all counts of the indictment and argued that the court should grant his motion to quash because the State had failed to prove that its prosecution of him on the indictment was not barred by the statute of limitation. The trial court then denied the motion to quash, finding that the State had met its burden of proving that the charged offenses had occurred within the statute of limitation period, and it denied the motion for a directed verdict, ruling that the issues of identity, criminal intent, circumstantial evidence, and witness credibility were for the jury to determine.

(a) Before reaching the merits of Pennington's argument that the statute of limitation barred the State's prosecution of any offenses that occurred before September 13, 2006 (i.e., four years before the indictment was filed), we must address the State's argument that Pennington cannot prevail on this claim because the indictment was a superseding indictment that related back to the accusation it timely

11

filed on December 4, 2009. As shown above, in that accusation, the State charged Pennington with committing four counts of felony theft by conversion in 2006 and 2007, i.e., within the four-year statute of limitation period. The State contends, therefore, that, even if it filed the indictment after the statute of limitation period for Counts 1 through 11 had expired, as Pennington contends, those counts were not fatally defective and its prosecution of those counts was not barred. We disagree.

> [A] superseding indictment brought after the statute of limitation has run is valid as long as (i) the original indictment[13] is still pending; (ii) the original indictment was timely; and (iii) *the superseding indictment does not broaden or substantially amend the original charges*. Whether an amended indictment broadens or substantially amends the charges contained in the original indictment depends upon whether the new charges contain elements that are separate and distinct from the original charges.

(Citations and punctuation omitted; emphasis in original.) *Martinez v. State*, 306 Ga. App. 512, 523 (2) (702 SE2d 747) (2010). Further, the determination of whether the

---

[13] See *Wooten v. State*, 240 Ga. App. 725, 726 (2) (a) (524 SE2d 776) (1999) (holding that this rule applies to charges that are originally brought by accusations as well as by indictments); see also OCGA § 17-7-70.1 (a) (1) (B) (allows the State to assert felony charges of theft by taking and theft by conversion by accusation as well as by indictment).

12

indictment broadens or substantially amends the original charges is an issue of law for the court. *Lee v. State*, 289 Ga. 95, 96 (709 SE2d 762) (2011).

In this case, the record shows that the accusation only charged Pennington with four counts of theft by conversion, that each offense was allegedly committed within eight- to twelve-month periods in either 2006 or 2007, and that each count charged Pennington with illegally taking funds from "Warren Pennington's Payroll Escrow Account," without naming any individual or business who had deposited funds into that escrow account.[14] In contrast, the indictment charged Pennington with committing three counts of theft by conversion during certain periods in 2006 and 2007, but it *also* included two charges that he committed theft by conversion in 2004 and 2005 – additional offenses that the State clearly did not allege in the accusation.

[14] In fact, during the motion hearing, the prosecutor specifically admitted that she filed the indictment *because the accusation was legally insufficient to withstand a demurrer*. The hearing transcript shows that the prosecutor conceded the following facts: that the accusation "had no victims listed, simply said that [Pennington] took money out of this account, and that was why I . . . reindict[ed] the case"; that, if the State was still proceeding on the accusation, "I would agree with [Pennington] that it was not specific enough" to survive a demurrer "and that's why I took the time to reindict the case"; and that the accusation "was not specific enough and would have opened up the defendant to a double jeopardy issue." Despite these admissions, however, the State has failed to cite to any authority that would authorize an indictment to relate back to a previously filed, but admittedly deficient, accusation or indictment.

Further, the indictment *added* seven counts of theft by taking that allegedly occurred on specific dates in February, March, or April 2006. And, unlike the accusation, which stated that Pennington had stolen from *his business'* payroll escrow account, each of the counts of the indictment named *specific and independent businesses* that had deposited funds into the escrow account for the purpose of paying their employees and payroll taxes and, thus, were the alleged victims of Pennington's thefts from the account.

Moreover, although the State offers the unsupported argument on appeal that the crime of theft by conversion, as charged in the accusation, is basically the same offense as the thefts by taking that are charged in Counts 3 through 8 of the indictment,[15] it waived this argument by failing to raise it in the court below, as well

---

[15] Compare OCGA § 16-8-2 ("A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated."), with OCGA § 16-8-4 (a) ("A person commits the offense of theft by conversion when, having lawfully obtained funds or other property of another . . . under an agreement or other known legal obligation to make a specified application of such funds or a specified disposition of such property, he knowingly converts the funds or property to his own use in violation of the agreement or legal obligation."). See also OCGA §§ 16-1-6 (1) ("An accused may be convicted of a crime included in a crime charged in the indictment or accusation. A crime is so included when . . . [i]t is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the crime charged[.]"); 16-1-7

14

as by failing to cite to any authority to support the argument on appeal.[16] In fact, during the motion hearing, the State specifically argued that the thefts constituted *different* offenses, stating that the thefts are covered by two different statutes, so that "you can't lump them together" as if they are all the same kind of theft. According to the State, the thefts by conversion occurred when Pennington failed to timely pay the payroll taxes for clients who had already contributed the money to the payroll escrow account, while the thefts by taking occurred when Pennington withdrew or transferred money from the escrow account to pay his personal or business expenses.

Under these circumstances, we conclude that the indictment substantially and materially amended the accusation, so that the indictment did not relate back to the

---

(a) ("When the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime. He may not, however, be convicted of more than one crime if: (1) One crime is included in the other; or (2) The crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct."); *Drinkard v. Walker*, 281 Ga. 211, 212 (636 SE2d 530) (2006) (adopting the "required evidence" test for determining whether one crime is included within another under OCGA § 16-1-6 or OCGA § 16-1-7.).

[16] See *Williams v. State*, 277 Ga. App. 106, 108 (2) (625 SE2d 509) (2005) ("We are a court for the correction of errors of law committed by the trial court where proper exception is taken, and we will not consider issues and grounds for objection . . . which were not raised and determined in the trial court.") (footnote omitted); Court of Appeals Rule 25 (c) (2) (an argument is deemed abandoned when it is unsupported by a citation to authority).

15

accusation. See *Martinez v. State*, 306 Ga. App. at 523 (2) (holding that the State's decision to reissue an indictment that included an additional 13 false imprisonment counts and a kidnapping count substantially amended the charges in the original indictment because the additional offenses contain elements that are separate and distinct from the crimes charged in the original indictment).[17] Consequently, we find that the State's filing of the accusation did not stop the running of the four-year statute of limitation period for filing the indictment.

(b) We now turn to Pennington's contention that the trial court erred in refusing to dismiss Counts 3 through 8 and 10 because the statute of limitation period for those offenses had expired. As shown above, Counts 3 through 8 of the indictment charged that Pennington committed theft by taking on specific dates in February, March, and April 2006, while Count 10 alleged that Pennington committed theft by conversion

---

[17] See also *Lee v. State*, 304 Ga. App. 681, 682 (1) (697 SE2d 221) (2010) (holding that the State's decision to amend an accusation to replace a charge of prostitution with the separate and distinct offense of pimping substantially amended the original charge and, because the statute of limitation had expired before the amended accusation was filed, the State was barred from prosecuting the defendant on the pimping charge), rev'd on other grounds, *Lee v. State*, 289 Ga. 95, 97 (709 SE2d 762) (2011); *State v. Bair*, 303 Ga. App. at 187 (holding that it was impermissible for the State to reissue an indictment that included 31 counts of theft by taking after the original indictment, which alleged a single count of theft by taking, was dismissed as defective, because it broadened and substantially amended the original indictment).

16

between the dates of February 22 and May 19, 2006. The State did not allege that any exception to the running of the statute of limitation period applied to those counts. Because the State did not file the indictment until September 13, 2010, the indictment shows on its face that all of those dates fall outside the four-year statute of limitation period. Accordingly, we agree with Pennington that those counts of the indictment were fatally defective and were subject to a general demurrer. See *Jenkins v. State*, 278 Ga. at 604 (1) (B); *State v. Barker*, 277 Ga. App. at 87 (3). Thus, the trial court erred in refusing to dismiss those charges, and Pennington's convictions on those counts must be reversed.

(c) As for Pennington's motion to quash Counts 1, 2, and 11, the question presented is whether the State met its burden of proving to the trial court either (i) that each offense was committed within the statute of limitation period or (ii) that an exception to the statute of limitation applied to toll the running of the statute. See *Martinez v. State*, 306 Ga. App. at 522 (2).

(i) Count 11 alleged that Pennington committed theft by conversion at some point between July 31 and December 28, 2006. Therefore, the State had the burden of proving that the offense occurred between September 13 and December 28, 2006, i.e., a period within four years of the filing of the indictment. See id.

17

To that end, the State presented evidence showing that, in November 2006, Pennington failed to pay $3,035.75 in payroll taxes for a client named in Count 11, Horizon Controls, Inc. Thus, the record supports a finding that Pennington committed theft by conversion, as charged in Count 11, within the four-year statute of limitation period, and the trial court did not err in denying his motion to quash that count. See *Martinez v. State*, 306 Ga. App. at 522 (2); *State v. Bair*, 303 Ga. App. at 183 (We must accept the trial court's findings on disputed facts unless they are clearly erroneous.); see also *Stroud v. State*, 284 Ga. App. 604, 610 (3) (a) (644 SE2d 467) (2007) (Defense counsel's failure to file a motion to quash the indictment did not prejudice the defendant because, inter alia, the evidence showed that he committed the offenses charged in the indictment within the alleged date range and within the applicable statute of limitation period.).[18]

(ii) Although the indictment alleged that the offenses charged in Counts 1 and 2 were committed outside the statute of limitation period (i.e., in 2004 and 2005, respectively), both counts also alleged that an exception applied to the running of the

---

[18] See generally *Carpenter v. State*, 167 Ga. App. 634, 642 (9) (307 SE2d 19) (1983) ("It is well settled in Georgia law that evidence of guilt is not restricted to the day mentioned in the indictment, but may extend to any day previous to the [filing] of the bill [of indictment] and within the statute of limitation for the prosecution of the offense.") (citations and punctuation omitted).

limitation period, specifically, that the offenses were not discovered until May 22, 2008, at the earliest. See OCGA § 17-3-2 (2); *State v. Campbell*, 295 Ga. App. 856, 857-858 (673 SE2d 336) (2009); *Stack-Thorpe v. State*, 270 Ga. App. at 799 (1).

In proving that the exception applied in this case, the State presented evidence showing that Pennington had failed to pay taxes due for one of his clients, Abbott Creek Nurseries, Inc., in both 2004 and 2005. Although Abbott Creek began receiving delinquent tax notices from the IRS in late 2007, Pennington repeatedly offered excuses to explain the notices, so Abbott Creek did not become aware that the taxes had not been paid until several months later, during the summer of 2008, i.e., after the State began its criminal investigation of Pennington in May 2008.

In addition, the State showed that Pennington had failed to pay the 2005 payroll taxes for another client, Horizon Controls, Inc., but that the crime was not discovered until July 2008.

Given this evidence, we conclude that the State met its burden of proving that the statute of limitation period was tolled until the crimes charged in Counts 1 and 2 were discovered. See *Martinez v. State*, 306 Ga. App. at 522 (2); *State v. Campbell*, 295 Ga. App. at 857-858. It follows that the trial court did not err in denying Pennington's motion to quash those counts of the indictment.

19

(d) Given our ruling that the expiration of the statute of limitation period barred the State's prosecution on Counts 3, 4, 5, 6, 7, 8, and 10 of the indictment and that, as a result, Pennington's convictions on those counts must be reversed, we must determine whether the trial court's erroneous denial of Pennington's motion to quash those counts prior to trial, and the improper admission of evidence on those counts that resulted from such error, prejudiced Pennington to the extent that he was denied a fair trial as to the remaining counts. We find that, under the circumstances of this case, the admission of evidence on Counts 3 through 10 was unduly prejudicial to the jury's independent consideration of Pennington's guilt on Counts 1, 2, 11, and 12.[19] See *Jenkins v. State*, 278 Ga. at 604-605 (1) (holding that, if the trial court finds before trial that the statute of limitation barred the prosecution on certain counts of the indictment, "the State cannot present these charges to the jury at trial") (footnote omitted). We also find that a reasonable probability exists that the jury's verdict would have been different if the evidence on those counts had not been disclosed to

[19] We note that, even if the offenses charged in Counts 3 through 8 and 10 would have been admissible as similar transactions to the remaining counts, Pennington would have been entitled, upon request, for the court to instruct the jury "correctly and completely on the admissibility of similar transaction evidence and the specific limited purpose for which it may be considered." *Sedlak v. State*, 275 Ga. 746, 751 (2) (e) (571 SE2d 721) (2002), relying upon *State v. Belt*, 269 Ga. 763 (505 SE2d 1) (1998).

20

the jury. See *London v. State*, 274 Ga. 91, 94 (4) (c) (549 SE2d 394) (2001) (A defendant may demonstrate reversible error by showing that, if the inadmissible evidence had not been disclosed to the jury, "there existed a reasonable probability that the result of the trial would have been different.") (citation omitted).[20] Accordingly, we conclude that Pennington is entitled to a new trial on Counts 1, 2, 11 and 12 of the indictment, and we hereby reverse those convictions and remand this case to the trial court for further proceedings.

2. Having reversed Pennington's convictions, we find that his remaining enumerated errors are moot.

*Judgment reversed and case remanded. Phipps, C. J., concurs. Branch, J., concurs in the judgment only.*

---

[20] See also *Felder v. State*, 266 Ga. 574, 576 (2) (468 SE2d 769) (1996) ("The standard for weighing nonconstitutional error in criminal cases is known as the 'highly probable test,' i.e., that it is 'highly probable that the error did not contribute to the judgment.' Under that test, a reversal is not required if the evidence of guilt is overwhelming in that there is no reasonable probability that the verdict of the jury would have been different in the absence of this error.") (citations and punctuation omitted).