## S97A1004. LANE v. THE STATE.
### (492 SE2d 230)

SEARS, Justice.

Appellant Howard Kevin Lane appeals from his conviction for felony murder. We find that because no precise charge on involuntary manslaughter was requested, the trial court did not err in failing to give that charge. We also find that because no clear plea bargain offer was communicated by the State, and because Lane had already informed his trial counsel that he would not accept any plea offer that required him to plead guilty to a criminal charge, trial counsel was not ineffective for failing to tell Lane of a plea offer purportedly tendered by the State. Finding no other error associated with the adjudication of Lane's guilt, we affirm.

The evidence introduced at trial authorized a rational trier of fact to find as follows: After a night of drinking, Lane, Farmer, and a woman acquaintance were in Lane's apartment. Lane and Farmer argued and a scuffle ensued. Farmer left the apartment, and Lane followed him onto the stairwell. The woman, who remained in the apartment, overheard the fight continue outside. After going outside, she met Lane on the apartment stairwell. He was bloody, and said that Farmer was badly hurt. Lane and the woman drove Farmer to a nearby hospital, where he was pronounced dead. After they arrived at the hospital, Lane told the woman that there was a knife somewhere outside the apartment, and she returned to the apartment, presumably in order to retrieve it. Police officers, however, already had isolated the crime scene, and had recovered a kitchen steak knife

from the stairwell.[1]

While at the hospital, Lane told a nurse that Farmer had fallen on the knife. After a police officer at the hospital informed Lane of his *Miranda* rights, Lane stated that he and Farmer had argued, and that Farmer had picked up a kitchen knife and placed it into his pants pocket. Appellant speculated that while the two were scuffling, the knife had fallen out of his pants pocket and stabbed Farmer. Appellant later gave a written statement to police in which he stated that he and Farmer were using a hammer, butter knife and steak knife while trying to open one of the apartment's windows, when they began shoving one another. Lane claimed that he had put one of the knives into his pants pocket after working on the window. After the scuffle moved outside, the two men began rolling on the ground, until Farmer stopped and said that he was bleeding. At that point, Lane believed that the knife may have been half in and half out of his pocket.

The surgeon who attended Farmer testified at trial that he had suffered a four-inch knife wound in his chest that angled upward and lacerated his heart. He also had been cut from behind his ear across his neck, on the back of his neck, and across his hand. All of the wounds were consistent with the knife recovered from the murder scene. The surgeon opined that it would have required considerable force to insert and remove the blade from Farmer's chest. A state medical examiner corroborated the surgeon's testimony, and also testified as to bruises and abrasions on Farmer's body.

1. The evidence introduced at trial, considered most favorably to the verdict, was sufficient to authorize a rational trier of fact to find Lane guilty beyond a reasonable doubt of felony murder and possession of a knife while committing a crime.[2]

2. The trial court did not err by failing to charge the jury on involuntary manslaughter. Involuntary manslaughter occurs when one unintentionally causes the death of another by the commission of

---

[1] The murder occurred on March 29, 1994, and Lane was indicted on May 12, 1994, for malice murder, felony murder, voluntary manslaughter, aggravated assault, and possession of a knife during the commission of a crime. The trial was held on September 26-28, 1994, and Lane was found guilty of felony murder, with aggravated assault being the underlying felony, and possession of a knife during the commission of a crime. He was sentenced to life in prison for the murder conviction, and a consecutive five-year term for the knife possession conviction. Lane filed a motion for new trial on October 24, 1994, and amended that motion on June 10, 1996 and August 6, 1996. A hearing was held on the motion on February 19, 1997, and an order denying the motion was issued on February 20, 1997. Lane timely filed his notice of appeal on March 3, 1997. The trial transcript was certified by the court reporter on December 19, 1994, the appeal was docketed with this Court on March 26, 1997, and the matter was orally argued before the court on June 17, 1997.

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

some act other than a felony,[3] and a charge on involuntary manslaughter should be given, *upon a proper request*, when there is slight evidence to support it.[4] Lane points to his testimony that a knife in his pants pocket accidentally stabbed Farmer while the two were scuffling as evidence that would have warranted the jury to find him guilty only of involuntary manslaughter. In making this argument, Lane concedes that he was engaged in misdemeanor assault and battery while scuffling with Farmer, but argues that such misdemeanor conduct will support an involuntary manslaughter conviction.[5]

However, pretermitting whether there was sufficient evidence to warrant the charge, because Lane's request to charge was so exceedingly broad and ambiguous as to render it insufficient as a matter of law (as concerns a charge on involuntary manslaughter), we conclude that the trial court's failure to charge on involuntary manslaughter was not erroneous. At trial, Lane's written request to charge asked only that the trial court charge the jury on "murder, manslaughter, [and] aggravated assault," pursuant to the Pattern Charges "Part 4B, (as applicable)." Part 4B of the pattern instructions includes charges on malice murder, premeditation, felony murder, motive, voluntary manslaughter, provocation, mutual combat, inferences drawn from weapons use, involuntary manslaughter, homicide by vehicle, concealing a death, justification, and use of force, among others.[6]

A requested charge must be " ' "legal, apt, and *precisely* adjusted to some principle involved in the case and be authorized by the evidence." ' "[7] If any portion of the request to charge fails in these requirements, denial of the request is proper.[8] In this case, Lane's "catchall" request to charge Part 4 (B) of the Pattern Instructions "as applicable" was not at all precisely adjusted to the principles of the case, especially in light of the voluminous content of Part 4 (B). Thus, we must conclude that the failure to charge on involuntary manslaughter was not erroneous.[9]

3. In its ruling on Lane's motion for new trial, the trial court

---

[3] OCGA § 16-5-3.

[4] *Arnett v. State*, 245 Ga. 470, 473 (265 SE2d 771) (1980).

[5] Id.

[6] Suggested Pattern Jury Instructions, Vol. II, pp. 68-89.

[7] *Minor v. State*, 264 Ga. 195, 197 (442 SE2d 754) (1994) (emphasis in original) (quoting *Hill v. State*, 259 Ga. 557, 558 (385 SE2d 404) (1989)).

[8] *Minor*, supra.

[9] Similarly, we reject Lane's contention that the trial court erred by not charging the jury that the State bore the burden of establishing beyond a reasonable doubt that Farmer's death was not an accident, as claimed by Lane. The jury was charged properly regarding the State's burden of proof, and the defendant's lack thereof. Furthermore, no request to give that particular charge was made to the trial court. See *White v. State*, 267 Ga. 523 (481 SE2d 804) (1997).

found that because no plea offer was conveyed by the State to defense counsel, and because defense counsel did not fail to discuss valid plea offers with Lane, there was no merit to Lane's contention that trial counsel was ineffective. Our review of the transcript of the new trial hearing leads us to the same conclusion.

Lane contends that before trial, the State informed defense counsel that if Lane agreed to plead guilty to voluntary manslaughter, that the other charges against him would be dropped, and that defense counsel failed to convey that plea offer to Lane. Lane further contends that, had the plea offer been conveyed to him, he would have accepted it. However, at the new trial hearing, the assistant district attorney who prosecuted the State's case against Lane testified that, while it was his subjective intent to make a plea offer to Lane, he did so "by innuendo" and merely inquired of defense counsel whether Lane "would be interested in voluntary manslaughter." In response, the assistant district attorney understood defense counsel to communicate that any resolution of the prosecution that entailed Lane going to prison would be unacceptable to him.

Also at the new trial hearing, defense counsel testified that before trial, the State's attorney had asked, in passing, whether Lane "would be interested in something other than malice or felony murder," and that by this, he assumed the State's counsel meant to inquire whether Lane would be willing to plead guilty to voluntary manslaughter. Defense counsel testified that, before trial, he did tell Lane that he could plead guilty to voluntary manslaughter and be sentenced appropriately under the law. However, defense counsel also testified that he did not understand the State to have offered a plea arrangement, and therefore did not tell Lane that the State's attorney had offered to plea bargain. Moreover, defense counsel testified that at all times, he understood Lane's position to be that he would not accept any settlement of the case against him that involved pleading guilty to any criminal charge.

This evidence shows that both lawyers agree (1) that the State did not communicate a specific offer to accept a plea of guilty to voluntary manslaughter in exchange for dropping the other charges against Lane, and (2) that any resolution that involved Lane conceding his guilt to a criminal charge, and resulting incarceration, was unacceptable to him. Furthermore, the evidence shows that defense counsel did discuss with Lane the possibility of pleading guilty to voluntary manslaughter, and that Lane rejected that proposal. Finally, defense counsel's testimony that he did not understand the State to have communicated a plea offer is consistent with the district attorney's testimony that his communication was by innuendo, and thus indirect. Under these circumstances, the trial court's factual findings that (1) no actual plea offer was conveyed by the State to defense

counsel, and (2) defense counsel did not fail in its duty to discuss plea offers with Lane, were not clearly erroneous. Based upon these findings of fact, we agree with the trial court that under the standards enunciated in *Strickland v. Washington*,[10] defense counsel was not ineffective.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 3, 1997 —
RECONSIDERATION DENIED NOVEMBER 21, 1997.

*Randall M. Clark, O. Dale Jenkins,* for appellant.

*J. David Miller, District Attorney, Mark E. Mitchell, James E. Hardy, Assistant District Attorneys, Thurbert E. Baker, Attorney General, H. Maddox Kilgore, Assistant Attorney General,* for appellee.

---

[10] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).