A10A1904. MARTINEZ v. THE STATE.
A10A1905. QUIROZ v. THE STATE.
(702 SE2d 747)

BLACKBURN, Senior Appellate Judge.

Following a jury trial on a forty-nine-count indictment, Paulino Gonzalez Martinez was convicted of twenty-eight counts, including ten counts of false imprisonment,[1] six counts of armed robbery,[2] four counts of burglary,[3] three counts of aggravated assault,[4] two counts of criminal attempt to commit armed robbery,[5] one count of criminal attempt to commit burglary,[6] one count of kidnapping,[7] and one count of sexual battery.[8] The jury could not reach a verdict as to

---

[1] OCGA § 16-5-41 (a), (c).
[2] OCGA § 16-8-41 (a).
[3] OCGA § 16-7-1 (a).
[4] OCGA § 16-5-21 (a) (1).
[5] OCGA §§ 16-4-1; 16-8-41 (a).
[6] OCGA §§ 16-4-1; 16-7-1 (a).
[7] OCGA § 16-5-40 (a).
[8] OCGA § 16-6-22.1 (b).

eighteen counts, and acquitted Martinez of the remaining three counts.

Martinez's co-defendant, Javier Alonso Quiroz, was charged under the same indictment with 36 counts. He was convicted of twenty-three of those charges, including ten counts of false imprisonment, six counts of armed robbery, three counts of burglary, two counts of aggravated assault, and a single count each of kidnapping and sexual battery. The jury could not reach a verdict as to five counts and acquitted Quiroz of the remaining eight counts.

In Case No. A10A1904, Martinez appeals from the denial of his motion for a new trial, asserting: (1) that because the only evidence supporting his conviction on Counts 19-43 of the indictment was the uncorroborated testimony of a single co-conspirator, that evidence was insufficient as a matter of law; (2) that his prosecution for the crimes charged in Counts 6, 7, 8, 12, 13, 17, 18, 23-25, 29-33, 39-43, and 46 of the indictment was barred by the applicable statute of limitation; and (3) that his trial counsel was ineffective for failing to request a jury instruction on the statute of limitation issue. In Case No. A10A1905, Quiroz appeals the denial of his new trial motion, alleging: (1) that because the only evidence supporting his conviction on Counts 20-25 of the indictment was the uncorroborated testimony of a single co-conspirator, that evidence was insufficient as a matter of law; (2) that his prosecution for the crimes charged in Counts 19, 22-26, 28-35, and 38-40 of the indictment was barred by the applicable statute of limitation; (3) that the trial court erred in refusing to allow him to introduce certain evidence to impeach the testimony given by one or more of his alleged accomplices; (4) that the trial court erred in failing to give his requested jury instruction on alibi; and (5) that the trial court erred in refusing to grant him a remedy for the State's failure to identify which of its witnesses it intended to call to rebut Quiroz's alibi evidence.

We find that the evidence was sufficient to sustain the convictions of both Martinez and Quiroz, and that the trial court did not err in its evidentiary rulings or in instructing the jury. We further find, however, that the applicable statute of limitation barred prosecution of the crimes charged in Counts 6, 7, 8, 12, 13, 17, 18, 23, 24, 25, 29, 30, 31, 39, and 40 of the indictment. Accordingly, we affirm Martinez's and Quiroz's convictions on all counts not barred by the statute of limitation, but reverse as to the remaining counts. We further hold that the State may not retry Martinez and Quiroz on those counts as to which the jury could not reach a verdict and whose

prosecution is time-barred.

> On appeal from a criminal conviction, the evidence is construed in the light most favorable to the verdict of guilt, and the presumption of innocence no longer applies. As an appellate court, we do not weigh the evidence, judge the credibility of witnesses, or resolve conflicts in trial testimony when the sufficiency of the evidence is challenged. Instead, we determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Grimes v. State.*[9]

So viewed, the record shows that this case arose out of a series of nine home invasions or attempted home invasions that occurred in Gwinnett County between February and April 2004. Each of the home invasions was referred to by the name of the street where it occurred; thus the nine incidents were referred to as Oakland Walk, River Landing, Glenwhite Drive, Sandune Drive, Skyview Lane, Shadowood Road, Appian Way, Windsor Woods, and Davenport Park. All of the home invasions shared certain similarities. Specifically, each was carried out by a group of Hispanic males, dressed in dark clothing and wearing ski masks. The assailants all carried guns and in each case they tied up their victims, and stole money, jewelry, and small items such as cellular phones, laptop computers, and video-gaming systems. In several instances, they stole a vehicle that was located at the home being robbed. The specific facts regarding four of these nine incidents are relevant to the current appeal: the Sandune Drive home invasion and robbery, the Skyview Lane home invasion and robbery, the Shadowood Road home invasion and robbery, and the Appian Way attempted home invasion.

*Sandune Drive (Counts 19 through 25).* In the early morning hours of April 9, 2004, a group of masked gunmen broke into a home on Sandune Drive and robbed the occupants at gunpoint, stealing clothing, wallets, money, and other items. They tied up the residents and assaulted one by kicking him and, before leaving, the assailants shot another of the residents in the leg. As they left, the perpetrators stole a Ford truck that was parked at the residence. They then stole the truck's audio system before abandoning the vehicle. At trial, evidence established that the residents of Sandune Drive were six male roommates, at least two of whom worked on construction crews with Martinez and three of his original co-defendants.

---

[9] *Grimes v. State*, 291 Ga. App. 585, 585 (662 SE2d 346) (2008).

*Skyview Lane and Shadowood Road (Counts 26-41).* During the early morning hours of April 18, 2004, masked gunmen broke into a residence located on Skyview Lane. The gunmen tied up the husband, wife, and two children who lived in the home, and then beat the husband and sexually battered the wife. The gunmen stole money, jewelry, a computer, and other items, as well as a vehicle. Four of the gunmen took the wife from the residence and demanded that she show them her sister's house, which was located in the same neighborhood. The remaining gunmen stayed behind at the Skyview Lane residence while the wife drove with the other assailants to her sister's home, on Shadowood Road.

Upon arriving at the sister's house, the gunmen made the wife knock on the door, and when the sister's husband responded to the knock, they forced their way into the home. The gunmen then tied up the wife a second time, as well as all the residents of Shadowood Road, and robbed the residents of personal items, such as a cellular telephone, money, and jewelry. One of the assailants tortured the sister's husband with a heated knife and threatened the husband's child to get the husband to tell him where money was hidden. After the gunmen located that money, they stole the same and fled the scene.

*Appian Way (Counts 42 and 43).* After the invasion of their home on Shadowood Road, the family living there relocated to a residence on Appian Way. Early on the morning of April 27, 2004, masked men attempted to force their way into that home, but fled after one of the residents fired gunshots in their direction.

On April 30, 2004, police made a traffic stop of one of Martinez and Quiroz's original co-defendants. Evidence found in that vehicle and obtained during a subsequent police interview with that co-defendant led police to obtain arrest warrants for eight additional men, including Martinez and Quiroz. Police also obtained search warrants for two apartments used as residences by several of the suspected assailants. Martinez and at least three of his original co-defendants lived at one of those apartments, referred to as the "Clairmont Springs" apartment. Officers arrested Martinez and two other suspects at the Clairmont Springs apartment, where they also found a number of items similar to those used in the home invasions, including guns, ammunition, and masks, gloves, and other clothing like that worn by the robbers. At that apartment, police also recovered numerous items stolen from the victims at Skyview Lane and Shadowood Road, including jewelry, a laptop computer, and a video-gaming system.

On July 21, 2004, Martinez, Quiroz, and seven co-defendants were indicted on 24 counts ("the 2004 indictment"). Both Martinez and Quiroz were charged with crimes arising out of each of the nine

516

home invasions; the crimes charged were burglary, armed robbery, aggravated assault, sexual battery, and criminal attempt to commit armed robbery.

Seven of the defendants named in the 2004 indictment were either tried on those charges or pled guilty, leaving only Martinez and Quiroz with their cases unresolved. On February 11, 2009, Gwinnett County re-indicted Martinez and Quiroz ("the 2009 indictment"). Charges against Quiroz arising out of the first two home invasions (Oakland Walk and River Landing) were dropped, based upon documents showing that at the time of those incidents Quiroz was in custody in North Carolina. Thus, the 2009 indictment charged Martinez with forty-nine counts arising out of the nine home invasions and charged Quiroz with counts arising out of seven of the home invasions. Specifically, the 2009 indictment added eighteen counts of false imprisonment, six additional counts of armed robbery, one additional count of aggravated sexual battery, and one count of kidnapping. It also substituted a charge of criminal attempt to commit burglary, in lieu of one of the burglary charges.

Because all of the perpetrators wore masks, none of the victims who testified at trial were able to identify either Martinez or Quiroz as one of their assailants. Pursuant to a court-imposed condition of their sentences, however, three of Martinez's and Quiroz's original co-defendants testified for the State at trial. The first of these co-defendants had lived with Martinez at the Clairmont Springs apartment. He admitted having pled guilty to the home invasions and armed robberies that occurred at Sandune Drive, Skyview Lane, and Shadowood Road, but stated that he did not participate in the attempted home invasion at Appian Way. With respect to the Sandune Drive incident, this co-defendant testified that Quiroz was present and participated, but that he could not recall if Martinez had been present. He further testified that Quiroz was also present at and participated in the home invasions at Skyview Lane and Shadowood Road, but that Martinez was not present at either location. Martinez was, however, present at the Clairmont Springs apartment when the other participants returned from robbing the residences on Skyview Lane and Shadowood Road, and he may have received a portion of the proceeds from those robberies.

The second original co-defendant to testify against Martinez and Quiroz also lived at the Clairmont Springs apartment. He testified that both he and Martinez acted as lookouts for the Sandune Drive robbery, meaning that neither of them actually went into the house. This co-defendant also stated that he and Martinez acted as lookouts for the Skyview Lane robbery and that they discussed the incident afterward. Although the co-defendant did not state whether Martinez was present at the Shadowood Road robbery, he admitted being

one of the men who drove the wife from Skyview Lane to that location and to then forcing his way into the home located on Shadowood Road. He further testified that he had participated in the attempted home invasion at Appian Way, and that neither Martinez nor Quiroz was present. Additionally, he did not identify Quiroz as being present at or participating in the crimes at either Sandune Drive, Skyview Lane, or Shadowood Road.

The third co-defendant testified that he participated in planning some of the robberies, and that these planning sessions took place at the Clairmont Springs apartment where Martinez lived. He further explained that guns used in the robberies were stored at the Clairmont Springs apartment. Although he was present at the planning session for the home invasion of the Sandune Drive residence, this co-defendant did not participate in the subsequent robbery. He testified, however, that he participated in the home invasions and robberies at Skyview Lane and Shadowood Road, as well as the attempted home invasion on Appian Way. According to this witness, both Martinez and Quiroz participated in all three of these incidents. The third co-defendant stated that Quiroz told him that he had shot the victim on Sandune Drive and tortured the man on Shadowood Road.

Prior to trial, Quiroz filed notice of an alibi, with that notice apparently specifying merely that Quiroz had been in North Carolina at the time of the crimes charged. The State did not file a response to this notice. Immediately before trial, Quiroz's attorney objected to the State's failure to prepare a specific list of witnesses who might testify with respect to Quiroz's alibi. Defense counsel also requested the trial court to order the third co-defendant, who had previously refused defense counsel's request for an interview, to submit to such an interview.

The State responded that, given the lack of specifics in the notice of alibi, it planned to rely on those witnesses listed for its case-in-chief to rebut any specific alibi evidence that Quiroz might present at trial. Those witnesses would testify that Quiroz participated in the crimes at issue, regardless of what alibi evidence he might present. The trial court overruled Quiroz's objection and did not grant any of the relief he requested.

Quiroz's defense was that he had been misidentified as a participant in the crimes at issue. To support this theory, he sought to introduce into evidence: (1) an unredacted copy of the 2004 indictment, which charged him with crimes resulting from the Oakland Walk and River Landing home invasions; (2) evidence showing that the State dropped those charges after learning Quiroz was incarcerated in North Carolina at the time of those crimes, and therefore could not have participated in the same; and (3) testimony

concerning the basis on which the grand jury indicted him for those crimes in 2004. He argued that such evidence was the only means of showing that he had been falsely accused of these crimes, which would support his assertion that he had been falsely accused with respect to the remaining home invasions. The trial court refused to allow the 2004 indictment to be admitted for that purpose,[10] and refused to allow Quiroz to explore the specific basis for the charges against him in the 2004 indictment. Specifically, the trial court would not allow Quiroz to cross-examine the lead investigator about what information he provided to the grand jury in 2004. The trial court did, however, allow Quiroz to question each of the original co-defendants who testified against him about what they had told law enforcement officials regarding Quiroz's participation in any of the home invasions at issue.

During cross-examination of the first co-defendant, Quiroz sought to introduce evidence showing that after another of the original co-defendants (Cisneros) was convicted following a jury trial, all of the remaining co-defendants were brought into court for his sentencing. Cisneros received six life sentences and, after witnessing that, the first co-defendant agreed to enter a guilty plea and testify against Martinez and Quiroz. The trial court, however, refused to allow defense counsel to elicit testimony from the first co-defendant to establish that he pled guilty and agreed to testify only after seeing Cisneros receive such a severe sentence. In making this ruling, the trial court discussed with defense counsel the fact that the attorneys for all of the remaining, original co-defendants, including counsel for Martinez and Quiroz, had asked that their clients be in court to witness Cisneros's sentencing for the specific purpose of "hopefully get[ting] [the remaining co-defendants] to plead guilty." Quiroz's attorney acknowledged this fact, saying, "I'll state for the record, all of us thought that was a great idea." Moreover, the trial court did allow defense counsel to cross-examine the first co-defendant about what charges he had been indicted for, what charges he had pled guilty to, what sentence he could have received for those charges, and what sentence he did receive.

Quiroz's attorney requested a jury instruction on alibi, but the trial court refused to give one, noting that Quiroz had presented no alibi evidence.

With respect to Martinez, the jury could not reach a verdict on the charges arising out of the Oakland Walk, River Landing, and Glenwhite Drive incidents (Counts 1-18); the jury convicted him of

---

[10] A redacted copy of the 2004 indictment, omitting the names of Martinez and Quiroz, was admitted for the purpose of cross-examining the co-defendants who testified at trial.

all charges arising out of the Sandune Drive, Skyview Lane, Shadowood Road, Appian Way, and Davenport Park incidents (Counts 19-43 and 47-49); and the jury acquitted him of all charges arising out of the Windsor Woods incident (Counts 44-46). With respect to Quiroz, the jury could not reach a verdict on the charges arising out of the Glenwhite Drive incident (Counts 14-18); the jury convicted him of all charges arising out of the Sandune Drive, Skyview Lane, and Shadowood Road incidents (Counts 19-41); and the jury acquitted him of all charges arising out of the Appian Way, Windsor Woods, and Davenport Park incidents (Counts 42-49).

Following their convictions, Martinez and Quiroz each filed a motion for a new trial. The trial court denied both of those motions, and these appeals followed.

### Case No. A10A1904

1. Martinez first asserts that the evidence was insufficient to support his convictions, because the only evidence identifying him as a participant in any of the four incidents at issue is the uncorroborated testimony of a co-conspirator. We disagree. "In determining [the sufficiency of the evidence], we consider the inferences that can be logically derived from the evidence presented at trial," (punctuation omitted) *Cooper v. State*,[11] and "[a]s long as there is some evidence, even though contradicted, to support each necessary element of the [S]tate's case, this Court will uphold the jury's verdict." *Smith v. State*.[12]

Under Georgia law "the testimony of [a single] accomplice, standing alone, is insufficient to convict an accused." (Punctuation omitted.) *Burton v. State*.[13] Rather, "[t]o sustain a felony conviction based upon the testimony of an accomplice, there must be independent corroborating evidence, either testimony from another witness or corroborating circumstances, which connects the accused to the crime." *Reynolds v. State*.[14] Such corroborating evidence "need not be sufficient to warrant a guilty verdict or prove every material element of the crime; it need only tend to connect and identify the defendant with the crime charged." (Punctuation omitted.) *Terrell v. State*.[15] "The sufficiency of the corroborating evidence is a matter for the jury, and if the verdict is based upon the slightest evidence of

[11] *Cooper v. State*, 299 Ga. App. 199, 200 (682 SE2d 154) (2009).
[12] *Smith v. State*, 302 Ga. App. 222, 222 (1) (690 SE2d 867) (2010).
[13] *Burton v. State*, 293 Ga. App. 822, 825 (1) (668 SE2d 306) (2008).
[14] *Reynolds v. State*, 267 Ga. App. 148, 151 (3) (598 SE2d 868) (2004).
[15] *Terrell v. State*, 268 Ga. App. 173, 175 (2) (601 SE2d 500) (2004).

corroboration connecting an accused to a crime, even if it is circumstantial, it is legally sufficient." (Punctuation omitted.) *Reynolds*, supra, 267 Ga. App. at 151 (3).

(a) *Sandune Drive*. Of the three co-defendants who testified at trial, only one (the second co-defendant) stated definitively that Martinez participated in the home invasion and robbery at Sandune Drive. The first co-defendant could not remember whether Martinez had participated and the third co-defendant did not participate in the Sandune Drive robbery, and so could not place Martinez at the scene. The third co-defendant, however, testified that he attended a meeting to plan the Sandune Drive robbery, and that this planning meeting occurred at the Clairmont Springs apartment where Martinez resided. Additionally, police recovered from that residence weapons identified by several of the co-defendants as having been used in the string of home invasions, masks and gloves like those used by the robbers, and clothing like that worn by the perpetrators. There was also independent evidence establishing a connection between Martinez, other of the co-defendants, and the residents of Sandune Drive — i.e., the evidence showed that several of these men worked together on one or more construction crews. Finally, as is discussed more fully below, extraneous evidence also connected Martinez to at least two home invasions (Skyview Lane and Shadowood Road), which employed the same modus operandi as was used on Sandune Drive. "Accordingly, there [was] at least slight evidence from sources extraneous to [the second co-defendant] as to [Martinez's] identity and participation in that robbery, and the evidence was sufficient to support the guilty verdict on [those] count[s]." *Grimes*, supra, 291 Ga. App. at 589 (1) (independent evidence showing defendant's participation in robbery that used same modus operandi as robbery at issue was sufficient to corroborate accomplice's testimony). See also *Smith*, supra, 302 Ga. App. at 224 (1) (a) (testimony that defendant participated in planning of robbery sufficient to corroborate testimony that he was a participant in robbery itself).

(b) *Skyview Lane*. Both the second and the third co-defendants testified that Martinez participated in the home invasion at Skyview Lane. "While it is true that a felony conviction cannot be sustained based only on the uncorroborated testimony of *one* accomplice (see OCGA § 24-4-8), where an additional accomplice provides testimony to corroborate that of the first accomplice, the evidence can suffice to sustain the conviction." (Emphasis in original.) *Gallimore v. State*.[16] See also *Smith*, supra, 302 Ga. App. at 224 (1) (a) ("[i]t is well settled that the testimony of one accomplice may be used to corroborate that

---

[16] *Gallimore v. State*, 264 Ga. App. 629, 630 (591 SE2d 485) (2003).

of another"). Accordingly, this testimony was sufficient to sustain Martinez's conviction for the crimes committed at Skyview Lane.

(c) *Shadowood Road.* Only the third co-defendant testified definitively that Martinez participated in the Shadowood Road robbery and home invasion. At the time Martinez was arrested at the Clairmont Springs apartment, however, police found several items stolen from the residents of Shadowood Road. The presence of those items in Martinez's residence was sufficient corroboration of the accomplice testimony that Martinez participated in the crimes at Shadowood Road. See *Young v. State*[17] (even if evidence showing "defendant's recent possession of the stolen [items] was insufficient to support a conviction for burglary alone, it was sufficient corroboration of [accomplice's] testimony"); *Brady v. State*[18] ("[defendant's] unexplained recent possession of goods taken in the armed robbery and the burglary has some corroborative value").

(d) *Appian Way.* The third co-defendant was also the only witness to identify Martinez as a participant in the attempted home invasion at Appian Way. We find, however, that there was sufficient evidence presented to corroborate this testimony. Specifically, there was significant evidence showing Martinez's participation in the other three incidents at issue. That evidence included not only the testimony of the three co-defendants, but also the stolen items recovered from Martinez's residence and the guns, masks, gloves, and clothing found at that apartment. Given the similarity between those crimes and the attempted robbery at Appian Way, the evidence showing Martinez's participation in those crimes could be used to corroborate the testimony that Martinez also participated in the incident at Appian Way. See *Grimes*, supra, 291 Ga. App. at 589 (1) (sufficient corroboration of accomplice testimony where "[e]xtraneous evidence also connected [defendant] to at least one robbery in which he employed the same modus operandi as [the accomplice] employed in the . . . robbery" at issue); *Bradford v. State*[19] (similarity in modus operandi between earlier crimes committed by defendant and crimes at issue sufficient to corroborate accomplice testimony identifying defendant as a participant).

2. The 2009 indictment added 25 counts against Martinez that were not included in the 2004 indictment. These new charges included seventeen counts of false imprisonment (Counts 6, 7, 8, 12, 13, 17, 18, 23, 24, 25, 30, 31, 32, 33, 39, 40, and 41) and one count of kidnapping (Count 29). The new indictment also substituted a

---

[17] *Young v. State*, 213 Ga. App. 278, 279 (1) (444 SE2d 598) (1994).
[18] *Brady v. State*, 169 Ga. App. 316, 317 (1) (312 SE2d 632) (1983).
[19] *Bradford v. State*, 262 Ga. 512, 513 (421 SE2d 523) (1992).

charge of criminal attempt to commit burglary, in lieu of one of the burglary charges (Count 42). On appeal, Martinez argues that his prosecution for these crimes was barred by the applicable statute of limitation.[20]

"The burden is unquestionably upon the [S]tate to prove that a crime occurred within the statute of limitation, or, if an exception to the statute is alleged, to prove that the case properly falls within the exception." (Punctuation omitted.) *State v. Meredith*.[21] In reviewing "a trial court's decision on a plea in bar, we conduct a de novo review of the legal issues. Further, we must accept the trial court's findings on disputed facts and witness credibility unless those findings are clearly erroneous." (Citation omitted.) *State v. Bair*.[22]

It is undisputed that false imprisonment, kidnapping, and criminal attempt to commit burglary are all felonies. See OCGA §§ 16-1-3 (5); 16-5-40 (d) (1); 16-7-1 (b); *Roberts v. State*.[23] Accordingly, prosecution for these crimes had to "be commenced within four years after the commission of the crime," unless the victim of the crime was under the age of 18, in which case the prosecution had to "be commenced within seven years after the commission of the crime." OCGA § 17-3-1 (b), (c).

"In criminal cases, the statute of limitations runs from the time of the criminal act to the time of indictment." *Jenkins v. State*.[24] Although the crimes at issue occurred between February and April 2004, the State did not indict Martinez on the charges at issue until February 2009 — i.e., until after the four-year statute of limitation had run. Moreover, the State acknowledged to the trial court that it made a deliberate decision not to seek a new indictment sooner. Specifically, the State explained that it delayed seeking a new indictment because Martinez's attorney had informed the prosecutor that, as soon as a new indictment issued, he would file a statutory speedy trial demand.[25] In making this deliberate decision to delay the indictment on the new charges, the State elected to gamble as to whether the prosecution of those charges would be time-barred.

---

[20] Martinez also argues that the crime of false imprisonment charged in Count 46 was barred by the statute of limitation. Martinez was acquitted of Count 46, however, and we therefore do not address that argument.

[21] *State v. Meredith*, 206 Ga. App. 562, 562 (425 SE2d 681) (1992) (physical precedent only).

[22] *State v. Bair*, 303 Ga. App. 183, 183 (692 SE2d 806) (2010).

[23] *Roberts v. State*, 282 Ga. 548, 548 (1) (651 SE2d 689) (2007).

[24] *Jenkins v. State*, 278 Ga. 598, 601 (1) (A) (604 SE2d 789) (2004).

[25] Such a demand would have required the State to try Martinez during the term of court "when the demand for speedy trial [was] made or at the next succeeding regular court term thereafter, provided that at both court terms there were juries impaneled and qualified to try [him]." OCGA § 17-7-170 (b).

Unfortunately for the State, it has lost that gamble.

The State argues that because the new charges arose out of the same incidents that gave rise to the charges in the 2004 indictment, the 2009 indictment should be viewed only as a superseding indictment. In other words, the State takes the position that the new charges in the 2009 indictment should "relate back" to the date of the 2004 indictment, and therefore be viewed as having been indicted within the four-year statute of limitation. This argument, however, finds no support in Georgia law, which holds that "a superseding indictment brought after the statute of limitation has run is valid as long as (i) the original indictment is still pending; (ii) the original indictment was timely; and (iii) *the superseding indictment does not broaden or substantially amend the original charges.*" (Emphasis supplied.) *Wooten v. State.*[26] See also *Lee v. State.*[27] Whether an amended indictment broadens or substantially amends the charges contained in the original indictment depends upon whether the new charges "contain elements that are separate and distinct" from the original charges. *Lee*, supra, 304 Ga. App. at 682 (1). In other words, we must examine whether the evidence used to prove the crimes charged in the original indictment would be adequate to prove the new crimes charged in the amended indictment. Id. at 683 (1).

As noted above, the charges contained in the 2004 indictment included burglary, armed robbery, aggravated assault, sexual battery, and criminal attempt to commit armed robbery. Thus, the State's decision to reissue the indictment so as to include the false imprisonment and kidnapping counts "substantially amended the original charge[s] because the offenses of [false imprisonment] and [kidnapping] contain elements that are separate and distinct" from any of the crimes charged in the original indictment. *Lee*, supra, 304 Ga. App. at 682 (1). Accordingly, we find that Martinez's prosecution for the crime of false imprisonment charged in Counts 6, 7, 8, 12, 13, 17, 18, 23, 24, 25, 30, 31, 39, and 40, and for the crime of kidnapping charged in Count 29, is barred by the applicable statute of limitation. We therefore reverse Martinez's convictions on Counts 23, 24, 25, 29, 30, 31, 39, and 40, and we hold that the State may not retry him on Counts 6, 7, 8, 12, 13, 17, and 18.

We hold, however, that the crime of false imprisonment charged in Counts 32, 33, and 41 were indicted within the applicable statute of limitation, and we therefore affirm Martinez's convictions on those charges. This is because the evidence at trial showed that the

---

[26] *Wooten v. State*, 240 Ga. App. 725, 726 (2) (a) (524 SE2d 776) (1999).
[27] *Lee v. State*, 304 Ga. App. 681, 682 (1) (697 SE2d 221) (2010).

victims of each of these crimes were under the age of 18 years at the time the offense occurred. Thus, a seven-year statute of limitation applied to these charges. OCGA § 17-3-1 (c). Because each of these crimes occurred in April 2004, they were indicted within the limitation period.

We also find that prosecution on Count 42 of the 2009 indictment was not time-barred. This count, for criminal attempt to commit burglary, was substituted in lieu of a count of burglary charged in the 2004 indictment. We do not find charging criminal attempt to commit a specific crime, instead of charging the specific crime itself, broadens or substantially amends that charge. This is because the same evidence could be used to prove both the crime and criminal attempt to commit that crime. See OCGA § 16-4-1 ("[a] person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime"). Accordingly, we affirm Martinez's conviction on Count 42.

3. In light of our holding in Division 2, we need not address Martinez's final claim of error, that trial counsel was ineffective for failing to request a jury charge on the statute of limitation issue. See *Lee*, supra, 304 Ga. App. at 683 (2).

### Case No. A10A1905

4. Quiroz asserts that the evidence was insufficient to sustain his conviction for the counts related to the Sandune Drive incident (Counts 20 through 25), because the only evidence identifying him as a participant was the uncorroborated testimony of a single accomplice. This argument, however, is refuted by the record, which shows that both the first and the third co-defendants testified that Quiroz participated in the crimes that occurred at Sandune Drive. Accordingly, this testimony was sufficient to convict Quiroz of those crimes. See *Gallimore*, supra, 264 Ga. App. at 630.

5. Quiroz also argues that prosecution for the new crimes charged in the 2009 indictment was barred by the statute of limitation. For the reasons set forth in Division 2, supra, we agree as to the counts of false imprisonment of the adult victims and as to the count of kidnapping. Accordingly, we reverse Quiroz's convictions on Counts 23, 24, 25, 29, 30, 31, 39, and 40, and hold that the State may not retry Quiroz on Counts 17 and 18. We affirm, however Quiroz's conviction on Counts 32, 33, and 41, each of which charged him with false imprisonment of a minor.

6. We next address Quiroz's claims that the trial court erred in excluding certain evidence that Quiroz sought to use to impeach the credibility of the co-defendants who testified against him.

"As a general rule, admission of evidence is a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse." (Punctuation omitted.) *Grant v. State*.[28] "The constitutionally improper denial of a defendant's opportunity to impeach a witness . . . , like other Confrontation Clause errors, is subject to a harmless-error analysis." (Punctuation omitted.) *Knox v. State*.[29] "The test for harmful error is whether it is 'highly probable' that the error contributed to the judgment." *Robinson v. State*.[30]

(a) Quiroz asserts that the trial court erred in refusing to allow him to introduce evidence showing that he had originally been indicted for crimes arising out of the first two home invasions — crimes which occurred while Quiroz was in custody in North Carolina. In his brief, Quiroz argues that such evidence was necessary "to expose which co-defendant" falsely implicated him in these crimes, thereby impeaching the credibility of that witness. This argument fails for several reasons.

First, the argument assumes that it was one of the co-defendants who testified at trial that implicated Quiroz in the crime spree. There is no evidence in the record to support this assumption. Rather, the testimony at trial established that any of the four co-defendants who did not testify at trial could have implicated Quiroz in the crimes. Moreover, as Quiroz concedes in his brief, the trial court allowed defense counsel to question the three co-defendants who testified against him as to what information they gave police regarding Quiroz's alleged involvement in the first two home invasions. Because the trial court gave Quiroz the opportunity to solicit the relevant information from these witnesses, any refusal to allow introduction of the 2004 indictment itself did not harm Quiroz. See *Knox*, supra, 290 Ga. App. at 54 (2); *Grant*, supra, 289 Ga. App. at 233 (2).

Finally, we note that if defense counsel's goal was, in fact, to impeach one or more of the witnesses with their grand jury testimony, then the way to achieve that goal was to use a copy of that testimony. See *Robinson*, supra, 265 Ga. App. at 482 (1) (defense counsel may use a copy of grand jury testimony to impeach witness); *Askew v. State*[31] ("[e]vidence of [witness's] grand jury testimony identifying [defendant] as one of the robbers was introduced for purposes of impeachment"). Trial counsel's failure to attempt im-

---

[28] *Grant v. State*, 289 Ga. App. 230, 232 (2) (656 SE2d 873) (2008).
[29] *Knox v. State*, 290 Ga. App. 49, 53-54 (2) (658 SE2d 819) (2008).
[30] *Robinson v. State*, 265 Ga. App. 481, 482 (1) (594 SE2d 696) (2004).
[31] *Askew v. State*, 254 Ga. App. 137, 138 (1) (564 SE2d 720) (2002).

peachment in this way supports the trial court's conclusion that Quiroz's attorney was seeking to introduce the 2004 indictment not for impeachment purposes, but for other, irrelevant purposes. Accordingly, we find that the trial court did not abuse its discretion in refusing to admit this evidence.

(b) Nor do we find any abuse of discretion in the trial court's refusal to allow defense counsel to cross-examine the first co-defendant as to the timing of his decision to enter a guilty plea. Specifically, the trial court would not permit Quiroz to show that the first co-defendant pled guilty and agreed to testify against Quiroz only after he witnessed the harsh sentence received by another of the original co-defendants. Quiroz premises this claim of error on the rule that the testimony of a co-defendant who has entered into a negotiated plea deal

> with the State regarding his understanding of the disparity between the sentence he [received] for his cooperation and the sentence he would have [received] without that cooperation is objective evidence from which a jury can determine whether the witness is biased to a degree that affects credibility.

*State v. Vogleson*.[32] This rule, however, does not apply to the current facts, because the first co-defendant did not enter into a negotiated plea with the State. Rather, he agreed to plead guilty and to let the trial court impose an appropriate sentence. As a condition of the sentence it did impose, the trial court required this co-defendant to testify truthfully at any subsequent trial involving the crimes at issue. Given these circumstances, we fail to see how the timing of the first co-defendant's decision to plead guilty is relevant to his credibility in this case. Nor do we view that timing as evidence that this witness had any type of bias against Quiroz or had motive to provide false testimony against him.

Finally, we note that defense counsel was allowed to establish, through cross-examination of the first co-defendant, what crimes he had been charged with, which crimes he had pled guilty to, what sentence he might have received, and what sentence he did receive (which was a lesser sentence than he was eligible for). In light of the foregoing, we find no abuse of discretion by the trial court in refusing to allow cross-examination of the first co-defendant as to the timing of his decision to enter a guilty plea. "The right of cross-examination integral to the Sixth Amendment right of confrontation is not an

---

[32] *State v. Vogleson*, 275 Ga. 637, 639 (1) (571 SE2d 752) (2002).

absolute right that mandates unlimited questioning by the defense."
(Citation omitted.) *Watkins v. State*.[33] Rather, "[t]he Confrontation
Clause guarantees only an *opportunity* for effective cross-
examination, not cross-examination that is effective in whatever
way, and to whatever extent, the defense might wish." (Citation and
punctuation omitted; emphasis in original.) Id. See also *Howard v.
State*[34] (where co-defendant had no negotiated deal with the State,
trial court properly refused to allow cross-examination as to the
potential sentences faced by that co-defendant for the charges he
acknowledged were pending against him).

7. Quiroz argues that there was at least slight evidence to
support his alibi, which was that he was in North Carolina at the
time that all of the home invasions occurred. Thus, he argues that
the trial court erred in refusing to give his requested jury instruction
on alibi. We find no merit in this argument.

"A requested [jury] charge must be legal, apt, and precisely
adjusted to some principle involved in the case and be authorized by
the evidence. If any portion of the request to charge fails in these
requirements, denial of the request is proper." (Punctuation, foot-
note and emphasis omitted.) *Lane v. State*.[35] "The defense of alibi
involves the impossibility of the accused's presence at the scene of
the offense at the time of its commission. The range of the evidence
in respect to time and place must be such as reasonably to exclude
the possibility of presence." (Punctuation omitted.) *Moore v. State*.[36]
With respect to Quiroz's presence in North Carolina, the evidence
showed that he was in custody in North Carolina at the time of the
first two home invasions, which took place during a ten-day period in
late February and early March 2004. The evidence also showed that
Quiroz was arrested in North Carolina on the charges at issue in
February 2005, approximately ten months after the last home
invasion occurred. There was, however, no evidence to establish that
Quiroz was in North Carolina in April 2004, when all of the crimes
of which he was convicted occurred. Accordingly, the trial court did
not err in refusing to give the requested jury instruction. Id. See also
*Huckabee v. State*[37] ("[a] trial court does not err in refusing to give a
requested charge when the evidence at trial does not support it").

8. In his final enumeration, Quiroz asserts that the trial court
erred in refusing to grant his requested remedy[38] for the State's

---

[33] *Watkins v. State*, 276 Ga. 578, 582 (3) (581 SE2d 23) (2003).

[34] *Howard v. State*, 286 Ga. 222, 225-226 (2) (686 SE2d 764) (2009).

[35] *Lane v. State*, 268 Ga. 678, 680 (2) (492 SE2d 230) (1997).

[36] *Moore v. State*, 268 Ga. App. 398, 400 (6) (601 SE2d 854) (2004).

[37] *Huckabee v. State*, 287 Ga. 728, 733 (4) (b) (699 SE2d 531) (2010).

[38] Specifically, Quiroz wanted the trial court: (i) to order the State to prepare a separate

failure to respond to his notice of an alibi. We disagree.

Upon a demand by the State, OCGA § 17-16-5 requires a defendant to disclose in writing an intention to rely upon an alibi defense. The written notice must be specific with regard to the place the defendant claims to have been at the time of the alleged offense and must provide the names, addresses, dates of birth, and telephone numbers of the witnesses upon whom the defendant intends to rely. OCGA § 17-16-5 (a). Once the defendant has provided this notice, the State "shall serve upon the defendant . . . a written notice stating the names, addresses, dates of birth, and telephone numbers of the witnesses . . . upon whom the [S]tate intends to rely to rebut the defendant's evidence of alibi. . . ." OCGA § 17-16-5 (b). If the State fails to comply with this statutory requirement, the trial court may, upon the motion of the defendant, provide a remedy. Such a remedy can include requiring the State to make a witness available for an interview, granting a continuance, or, "upon a showing of prejudice and bad faith, prohibit[ing] the [S]tate from introducing the evidence not disclosed or presenting the witness not disclosed, or . . . enter[ing] such other order as it deems just under the circumstances." OCGA § 17-16-6. The question of whether a remedy is warranted and, if so, what the remedy should be, is left to the trial court's discretion. See, e.g., *Malaguti v. State*.[39]

In analyzing Quiroz's claim of error, we first note that the trial court did not include any pretrial discovery or pleadings, including Quiroz's notice of alibi, in the appellate record transmitted to this Court.[40] We therefore have no way of knowing what information that notice included or whether it complied with OCGA § 17-16-5 (a). Assuming that the notice of alibi did meet the statutory requirements, however, then Quiroz is correct that the State's provision of its general witness list did not satisfy its obligations under OCGA § 17-16-5 (b). *Hayes v. State*.[41] To be entitled to a new trial, however, Quiroz was required to demonstrate what harm he suffered as a result of the State's noncompliance. See, e.g., *Davis v. State*[42] ("absent a showing of harm, reversal is not required" for the State's failure to comply with statutory discovery requirements). Quiroz has shown no such harm. "Thus, even assuming without deciding that

---

witness list, identifying which persons on its general witness list would be testifying as to Quiroz's alibi; and (ii) order the third co-defendant who testified at trial, and who had previously rejected requests from Quiroz's trial counsel for an interview, to submit to such an interview.

[39] *Malaguti v. State*, 273 Ga. 398, 401 (2) (543 SE2d 1) (2001).

[40] We assume that this omission was inadvertent, given that Quiroz's notice of appeal states that "nothing shall be omitted from the record on appeal."

[41] *Hayes v. State*, 249 Ga. App. 857, 863 (4) (549 SE2d 813) (2001).

[42] *Davis v. State*, 240 Ga. App. 301, 303 (2) (522 SE2d 729) (1999).

the trial court erred, [Quiroz has] failed to sustain his appellate burden" and "reversal is not warranted" on this ground. *Miller v. State*.[43]

For the reasons set forth above, in Case No. A10A1904 we affirm Martinez's convictions on Counts 19-22, 26-28, 32-38, 41-43, and 47-49; we reverse Martinez's convictions on Counts 23, 24, 25, 29, 30, 31, 39, and 40; and we hold that the State may not retry him on Counts 6, 7, 8, 12, 13, 17, and 18. In Case No. A10A1905, we affirm Quiroz's convictions on Counts 19-22, 26-28, 32-38, and 41; we reverse Quiroz's convictions on Counts 23, 24, 25, 29, 30, 31, 39, and 40; and we hold that the State may not retry Quiroz on Counts 17 and 18.

*Judgment affirmed in part and reversed in part in Case Nos. A10A1904 and A10A1905. Barnes, P. J., and Senior Appellate Judge William LeRoy McMurray, Jr., concur.*

DECIDED OCTOBER 19, 2010.

*Brown & Gill, William L. Gill*, for appellant (case no. A10A1904).

*Sharon L. Hopkins*, for appellant (case no. A10A1905).

*Daniel J. Porter, District Attorney, Lisa A. Jones, Stephen A. Fern, Assistant District Attorneys*, for appellee.

---

[43] *Miller v. State*, 235 Ga. App. 724, 725-726 (510 SE2d 560) (1998).